M. H. DETRICK CO. v. CHICAGO FIRE BRICK CO.

No. 6287.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1938.

Rehearing Denied March 21, 1938.

Franklin M. Warden and William F. Waugh, both of Chicago, Ill., for appellant.

Max W. Zabel, of Chicago, Ill., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

SPARKS, Circuit Judge.

By this action appellant sought injunctive relief and an accounting for damages arising from an alleged infringement of United States patent to Foltz, No. 1,747,822. The patent was issued February 18, 1930, on an application filed January 7, 1924, and was subsequently assigned to appellant. The defenses were invalidity and non-infringement. The court found each of the claims sued upon invalid, and dismissed the bill for lack of invention. From that decree this appeal is prosecuted.

The disclosures relate to furnace construction, and more particularly to that class which has a considerable vertical extent, such as are adapted for the burning of

pneumatically fed pulverized fuel for the heating of steam boilers. The state and development of the art here involved, prior to and at the time of the Foltz application, will be quite helpful in appraising his disclosures. They are fairly set forth in Lanyon v. M. H. Detrick Co., 9 Cir., 85 F.2d 875.

The general purpose of the invention is to provide an improved construction of furnace walls which will possess durability and stability, facilitate installation and repair, and contribute materially to the efficient operation of the furnace. The particular objects of the invention are to provide a furnace wall of desirable flexibility wherein the refractories (1) are maintained against shifting out of the vertical plane; (2) are not required to carry any great portion of the dead load of the structure, or excessive pressures resulting from thermal expansion; (3) may be installed, removed, or replaced in any limited area without requiring extensive dismantling or removal of those above or without such area; (4) are so arranged as to safeguard them from excessive overheating. Further specific objects are to provide a furnace construction wherein the entire furnace wall may be carried on structural members in such manner that the individual refractories may have a certain amount of independent movement so as to accommodate themselves to contraction and expansion in their own structure and in the furnace structure as a whole, without producing distortion or displacement of the wall, and wherein the supporting structural members are afforded requisite protection from the heat of the furnace; to accommodate admission of air through any selected portion of the walls, and adapted for alteration in that respect with facility; in which a minimum of different forms of refractories and supporting elements are required; in which the strength of the wall supporting members is utilized to the best advantage, so that they may be of minimum weight, the supporting refractories being carried thereon in such manner as to minimize the effect of eccentric loading of the supporting structural elements; which admits of versatility and variety in the design of the furnaces, and will have a great range to use without requiring variation in any of the characteristic details of the construction.

Generally the invention contemplates an external supporting frame made up of structural elements, including posts or columns which are carried on a suitable foundation, and having refractories which form the gas confining walls of the furnace chamber, supported on this frame and maintained thereby in such relationship that they are held against shifting, bulging, and toppling, while they are permitted certain freedom of individual movement so that they may accommodate themselves to changes in temperature without adversely affecting the form of the furnace wall, or its association with other elements of the installation.

The construction comprises column members, which, according to convenience or necessity, may or may not be the boiler columns employed for supporting parts of the boiler installation. These columns may be formed of rolled steel members, and may be supplemented at various intervals about the area of the furnace chamber, with other members in the nature of stud columns. These may be carried on the supporting columns by means of stringer beams which are bracketed to the supporting columns adjacent their lower ends. To the vertical frame members or columns are secured the transverse or horizontally extending hanger supports. These may be formed of angle bars bolted to brackets carried by the vertical frame members. Preferably they are uniformly spaced, one above another, and extend in parallel relationship from side to side of the frame structure, presenting, toward the furnace chamber, upwardly directed flanges. These hanger supports constitute retaining supports for the tile retaining members or wall hangers which may be formed of cast iron in the nature of brackets. They have a tension arm terminating in a hook, and a compression arm terminating in a foot. These arms are connected by a bar having lateral marginal flanges. At its lower end this bar and its flanges terminate at a shelf which projects at right angles to the longitudinal dimension of the flanges, and in a direction opposite the compression arm. The spacing of the hanger supports is established with reference to the distance between the hook and foot members, so that when the hook is engaged with the hanger support, the foot will be in co-operative relationship with the inner face of the subjacent hanger support. Each of the wall hangers is adapted to carry a number of slotted refractory tiles, the lowermost of which rests upon the shelf at the lower end of the flanged bar, which lowermost tile is provided with depressions to accommodate the shelf. All

of these tiles on any one hanger, except the top one referred to as the key brick, have T-shaped slots, which accommodate the bar of the hanger and its flanges, and when so engaged with and supported on the hanger the tiles are held in alignment vertically, but have a limited amount of individual play on the hanger.

The walls of the furnace chamber are built up of groups of refractories thus supported on the hangers, and these groups are placed in such relationship collaterally that the sides thereof will make contact. Thus there are provided a number of horizontally arranged series of hangers each supporting a limited number of refractories with their sides in alignment. The hangers in vertically adjacent series are arranged in staggered relationship, so that the tile in each series break joints with the tile on those in superjacent or subjacent series. Thus on each of the hanger supports there will be a distribution of the weight of the refractories carried on two of the series of hangers.

The suspension of the refractories on the hangers as thus described permits each hanger and its group of refractories to have a shifting movement relative to those about it, but only in the plane of the wall. Between the uppermost refractories engaged with the flanges of the hangers in one series, and those engaging the shelf of the hanger in the superadjacent series, is inserted one or more unslotted refractories, known as the key brick, and, if desired, a thin layer of compressible refractory material to form an expansion joint. In order to remove and replace any refractory or any one of the hangers, it is only necessary to remove the key brick of such tier, and then remove the slotted refractories by sliding them upwardly beyond the top of the flange.

As a means for controlling external air circulation over the wall refractories and their hangers, the furnace may be surrounded with an outer or sheathing wall of brick which are likewise supported on the hanger supports, whereby the sections of the outer wall thus supported may be removed without requiring dismantling of other sections similarly supported. This gives an air space entirely about the refractory wall, and the admission and circulation of air through it may be controlled by suitable dampers at desired locations. Air may also be admitted into the furnace chamber, by means of air ports, accomplished by the use of narrow refractories spaced apart, at desired points.

Claims 1, 2, 3, 14, 26, 27, 35, 36, 37, 38, 39, 48, 49, 50, 51, and 55 are here involved. Appellee treats claims 14 and 48 respectively as typical of appellant's single and double wall construction. The other claims are set forth in the margin,[1] and claims 14 and 48 are as follows:

"14. Furnace construction, comprising in combination, column members, transverse frame members joining said column mem-

---

[1] "1. A furnace structure comprising column members, transverse frame members carried thereby one above another, wall hangers supported on the frame members and extending to one side thereof, refractories supported on the hangers to form wall sections supported independently one above another, certain of said refractories being slotted and having anchoring connection with the hangers to prevent the refractories shifting inwardly or outwardly.

"2. A furnace structure comprising supporting columns, transverse frame members carried thereby one above another, rows of wall hangers supported on the frame members at one side thereof and at different elevations, vertical tiers of refractories supported on the hangers and anchored to the same to form wall sections one above another, and bricks removably supported on the tiers of refractories, said bricks and wall sections being associated to form a furnace wall."

"26. A furnace wall construction comprising a frame having columns support- ed on their lower ends and spaced apart in collateral alignment and horizontal shelf portions carried on said columns and arranged at different elevations, wall sections independently supported on said shelf portions one above another, said wall sections including refractories having freedom of movement on the shelf portions and anchored at their outer ends against displacement horizontally from the shelf portions, and compressible material inserted between adjoining wall sections to accommodate expansion.

"27. A furnace wall construction comprising columns spaced apart alongside the furnace and having foundation support at their lower ends, horizontally extending members secured to the columns at different elevations and carrying inwardly extending shelf portions, wall sections supported on the shelf portions one above another and comprising refractories arranged one upon another and anchored at their outer ends to prevent their shifting horizontally out of the plane of the sections, and compressible

bers to form a self-sustaining frame structure, wall hangers supported on the frame members laterally of said frame structure, refractories carried by the hangers to form independently supported wall sections, said wall sections being associated to form a furnace chamber wall, and certain of said refractories being anchored to their sup-

porting hangers to retain the refractories against displacement inwardly therefrom."

"48. In a furnace structure, in combination, a wall supporting frame disposed laterally of the furnace chamber, a furnace chamber wall comprising sections arranged one above another and each supported independently on said frame, means anchoring

material inserted between adjacent sections to accommodate expansion and protect the shelf portions from the furnace fire."

"35. A furnace wall construction comprising, in combination, a frame made up of metallic column members connected by horizontal members arranged collaterally of the furnace chamber, wall sections supported independently by the frame one above another, said wall sections composed of refractories arranged in courses, tile retaining members affixed to the frame and anchoring refractories in the sections against horizontal displacement while permitting them to shift vertically, the refractories of adjoining sections being arranged to afford expansion joints accommodating upward expansion of the sections relative to refractories of superjacent sections."

"36. Furnace construction comprising in combination, columns arranged along the furnace chamber, horizontal supporting members connected to the columns and disposed at the side thereof toward the furnace chamber, wall sections carried by the supporting members and arranged one above another to form a portion of the furnace chamber wall, said wall sections being formed of refractories arranged in courses, and tile retaining members affixed to the supporting members and engaging some of the refractories to hold them against displacement horizontally from the wall.

"37. A furnace wall construction as specified in claim 36 and in which refractories of adjoining sections are arranged to afford expansion joints accommodating vertical expansion of one section relative to the other.

"38. Furnace wall construction comprising, in combination, a structural frame including horizontal members, hangers supported on said members in horizontally running series disposed one above another, said hangers having shelf portions disposed laterally of the frame, and refractories supported on said shelf portions and forming a wall portion of the furnace chamber, some of the refractories being anchored to the hangers to hold such refractories against displacement horizontally.

"39. Furnace wall construction as specified in claim 38 and including an outer wall supported by the frame in laterally spaced association with the furnace chamber wall to afford an intervening air duct."

"49. A furnace structure comprising, in combination, a frame disposed collaterally of the furnace chamber, said frame including horizontal members, independently supported wall sections supported on said horizontal members collaterally of the frame to form the furnace chamber wall, means anchoring said sections against displacement horizontally and a sheathing wall composed of independently supported sections carried on the horizontal members collaterally of the furnace chamber wall.

"50. A furnace structure comprising, in combination, a sheathing wall, a furnace chamber wall spaced collaterally from the sheathing wall to afford an intervening air chamber, frame members for supporting the furnace chamber wall, and metallic members connecting said frame members and furnace chamber wall, said metallic members being partly embedded in the furnace chamber wall and having substantial areas exposed in the air chamber.

"51. A furnace structure comprising, in combination, a frame arranged collaterally of the furnace chamber, a sheathing wall sectionally supported on said frame, and a refractory furnace chamber wall sectionally supported on said frame in collaterally spaced relationship with the sheathing wall, said refractory wall having expansion joints between superposed sections."

"55. A furnace structure comprising, in combination, a frame, a sheathing wall, a furnace chamber wall spaced collaterally from the sheathing wall to afford an intervening air chamber, said furnace chamber wall being formed of refractories arranged in wall sections, metallic members supported on the frame and supporting adjacent chamber wall sections independently, said metallic members having anchoring connection with refractories in the wall sections and having heat radiating portions exposed in the air chamber."

said sections against horizontal displacement and a sheathing wall comprising sections independently supported on said frame and spaced collaterally of the furnace chamber wall."

It is contended by appellee that all of the claims concern themselves with nothing more than vertical frame members, horizontal frame members, means for supporting walls sectionally, and the individualistic features of expansion joints, tie-backs, hangers, air space, and T-slot in refractories. It further contends that all of these elements and features are disclosed by the following prior art patents: Pelton, Nos. 542,203, 542,204, and 581,940; Ladd and Baker, No. 1,027,738; Alston, No. 1,344,608; Stevens and Hosbein, No. 1,628,284; and Cowing, Nos. 1,552,392, 1,552,393, and 1,552,394.

Appellee asserts that there are only two elements in claim 14, namely, a framework consisting of column members and transverse members, and wall hangers for sectionally supporting a portion of a wall, and it insists that these elements are shown by Pelton.

Pelton's disclosures relate to modern construction of buildings in which steel or iron is inclosed in a brick or other wall in order to carry the building to a great height. These buildings have a framework which is self-supporting and hold a tied-back outer wall, and the same framework supports the inner wall of the building. There is an air space between the two walls for the purposes of insulation. Appellee admits that Pelton uses hollow tile instead of fire brick, and does not show removable hangers, as does Foltz, but it insists that the principles underlying Pelton's structure are precisely the same as those of Foltz, and that there is no functional difference involved in using either fire brick or common brick. It further suggests that Foltz not only claims nothing as to the movability of his hangers, but he shows no necessity or advantage of having them movable.

The Cowing patents relate to building construction, and pressure relieving joints incident thereto. They show an outer reinforced concrete wall supporting a plurality of tile which are supported sectionally by shelves. Provision is made for expansion between the various horizontal sections, and to tie-back the tile. However, Cowing's tie-back, or anchorage, consists of hook bars which do not permit a vertical shift of the tile.

The Ladd and Baker patent relates to the construction of blast or like furnaces, and has particular reference to that part of the furnace above the boshes, that is to say the portion of the furnace usually extending upwardly from the supporting columns. The outer wall is made of metal, which supports independently mounted and removable sections, each comprising a series of upright segmental metal plates or staves, assembled edge to edge to form a belt or circular wall extending upwardly from the boshes to the top of the furnace. Each of these sections supports the particular fire brick tile for one section. The plates are provided with transverse flanges or ribs on their faces, the function of which is to retain the brick lining in place and prevent it from slipping downwardly in case the lining is burned through at any point. The temperatures in blast furnaces reach 2500 degrees.

The Alston patent relates to a concrete chimney that ordinarily would be 200 or 225 feet in height. The bottom portion, about 20 to 30 feet in height, is flared to provide an adequate base. The purpose of the invention was to provide means for forming a cylindrical inner lining of uniform cross section, and for supporting this lining in sections. The patent discloses an outer supporting wall, consisting of reinforced concrete having vertical and horizontal metal strengthening elements. Suitable brackets are anchored in the outer wall and have bearing blocks co-operating directly with two of the strengthening elements. These brackets have shelves which support a section of the inner wall made of fire brick, or lining, and an air space is provided between the outer and inner walls. Instead of using a self-supporting framework with the outer wall mounted thereon, as shown by Foltz, the outer wall is made sufficiently strong to perform the required function by the use of vertical and horizontal metal reinforcing strips. This, appellee urges, is the equivalent of Foltz' structural steel framework having an outer brick sheathing wall. Alston used no tie-backs because obviously they were not needed in a circular stack to prevent an inward movement of the tile. Stack temperatures rarely exceed 700 degrees.

The Stevens and Hosbein patent relates generally to furnace-arch construction, and in certain features pertains particularly to ignition-arch constructions especially adapted for use in furnaces equipped with overfeed or traveling grate stokers. Its general

object was to provide a furnace-arch particularly qualified to withstand the destructive influences to which such structures are subjected, and which, when employed, in ignition arches, is adapted to contribute effectively to early ignition of fresh fuel. Another object was to provide an arch construction which would be adapted to be installed with facility, and would admit of repair, particularly with respect to the renewal or replacement of the refractories, with convenience and without extensive dismantling. Another object was to provide an arch construction which would be supported without depending upon the furnace walls as the load carrying members.

This patent shows a chain grate furnace, with a convex front arch supported by hangers. The front wall is only as high as the arch and the superposed apron wall, and the entire wall is suspended from an overhanging beam. The hangers have web portions faced at the front with a flange, in all respects quite similar to Foltz, except that the Stevens hanger is made convex instead of straight. The shelf of Stevens is placed vertically at the lower end of the arch, which at that point, by reason of its convexity, runs horizontally. The shelf does not carry the entire weight of the brick, as in Foltz, but it does support them to some extent, and stops them from coming downwardly along the convex surface of the flange. Stevens, like Foltz, holds his tile in place by means of a T-slot. The flange stops short of the top of the hanger, so that loose and unslotted tile may be mounted thereon, together with an expansion joint, which may be removed, as in Foltz, for the purpose of permitting the remaining tile to be slid from the flanged web portion. This patent also provides for an outer sheathing wall, consisting of bricks sectionally held by the same hanger, and an air space is thus provided for the circulation of air over the outer ends of the refractories and the frame members. The patent shows individual hangers for each tile width, there being a plurality of hangers, side by side, across the front of the furnace.

None of these prior art patents hereinbefore referred to was before the examiner when the Foltz application was considered. However, the British patent to Golby, No. 190,397, was used by the examiner as a reference because the American patent to Stevens and Hosbein had not yet issued. The British patent to Golby is the counterpart of Stevens and Hosbein, and is based on their American application.

■ We think it must be admitted that all the disclosures of these prior art patents are to be found in Foltz. This, of itself, however, would not be sufficient to defeat his patent, if his combination contained some new principle, or produced some new result, or an old result in a different or more efficient way, but we think none of these contingencies prevail. True, none of the cited patents contains everything, in precise form, which Foltz discloses, but we think it cannot be denied that each element which Foltz teaches is to be found in one or more of the prior art patents, performing the same service as it does in Foltz. We must not be understood as holding that Foltz is completely anticipated by each of the patents cited, either in form or in principle, but when considered together we think they disclose everything which he has attempted to teach.

■ We are convinced, however, that Stevens and Hosbein anticipate him in every respect. All of his claims were originally rejected on Golby, the British counterpart of Stevens and Hosbein, and they were afterwards allowed as a result of Foltz' argument that the duplication of Stevens' hangers to form a wall involved invention. We regret that we are unable to agree with this conclusion of the examiner. The Ninth Circuit Court of Appeals, in Lanyon v. M. H. Detrick Co., supra, likewise failed to agree with him and held invalid claims 14, 35, 36, 37, 38, 39, 49, 50, and 55, and others not here involved. With that decision we agree, and we hold those claims invalid, and likewise claims 1, 2, 3, 26, 27, 48, and 51.

Decree affirmed.