## S. F. BOWSER & CO., Inc., v. GILBERT & BARKER MFG. CO.

### No. 220.

District Court, N. D. Illinois, E. D.

Dec. 12, 1940.

Albert J. Fihe, of Chicago, Ill., for plaintiff.

Davis, Lindsey, Smith & Shonts, of Chicago, Ill., Franklin G. Neal (of Chapin & Neal), of Springfield, Mass., and J. Lewis Stackpole (of Fish, Richardson & Neave), of Boston, Mass., for defendant.

WILKERSON, District Judge.

The patents involved in this infringement suit relate to gasoline dispensing apparatus, particularly the mechanism for separating air from the liquid in order that the air may not register on the meter the same as gasoline.

The patents and claims in suit are:

Griffith reissue patent 21,186 dated August 29, 1939, on application of July 1, 1939 (original 2,044,727, issued June 16, 1936), claims 6, 17, 18, 19 and 20.

Lanser reissue patent 20,369 dated May 18, 1937, on application of January 6, 1933 (or, as contended by plaintiff, December 1, 1932) (original 1,783,510, issued December 2, 1930), claims 3, 5, 7, 10, 11 and 12.

Plaintiff alleges that five of defendant's devices infringe the following claims of the Griffith reissue patent:

| Defendant's model | Griffith reissue claims |
|---|---|
| T–93 | 6, 17, 18, 19, 20 |
| 80 | 6, 17, 20 |
| 96 | 6, 17, 19, 20 |
| T–3500 | 6, 17, 18, 19, 20 |
| T–90 | 6, 17, 19, 20 |

and infringe all of the six Lanser claims above specified.

The defenses are invalidity under the prior art and for other reasons, non-infringement, and intervening rights. Defendant, in its contention that the patents are invalid under the prior art, refers to twelve patents, six publications, and five prior uses,—the publications and prior uses being with two exceptions those of the plaintiff itself.

Plaintiff (Br. p. 30) concedes that the prior art is replete with structures which show parts of the construction in the Griffith and Lanser patents, but contends that no single reference shows the combination. Plaintiff states the issue to be whether it was invention to bring together the elements set out in the claims of the patents in suit.

This suit was at first based upon the original Griffith patent and on the Lanser reissue. During the pleadings, plaintiff decided that claim 6 of the original Griffith patent was too broad, in view of prior art cited by defendant, and had the patent reissued with claim 6 reworded, and with two additional claims 19 and 20. Plaintiff then filed a supplemental complaint on September 11, 1939, on the Griffith and Lanser reissues.

Gasoline is kept in an underground tank or reservoir. As occasion requires, liquid is made to flow out of the tank, either by suction pump or air pressure, into the customer's automobile tank or other receptacle, through the dispensing apparatus including a meter and a nozzle at the end of a pipe.

Air in the system, whether ahead of the gasoline or mixed with it, if not eliminated at some point before the meter, will go through the meter and register to the same extent as if it were gasoline, with the result that the customer will be paying for gasoline that he does not receive. In the patents in suit, in the defendant's devices, and in the prior art, means exist for eliminating the air before it reaches the meter.

In the Griffith device, compressed air is used to make the gasoline flow through the system. There is a tank containing gasoline. In order that all of the gasoline in the tank should not be under pressure, there is at the bottom of the tank an enclosed compartment into which gasoline from the main reservoir may flow through a valve until the compartment is filled. The air pressure is applied to gasoline in the inner compartment. This pressure closes the valve from the large reservoir and forces the liquid up from the inner compartment through a pipe into an air separating chamber. From that chamber there are two openings, one at the bottom to permit the liquid to flow to the meter and to the outlet nozzle, and the other at the top to permit air to escape. This air may or may not have with it some gasoline in either liquid or vaporized form. In order to recover any such liquid, the Griffith device has a down slanting pipe from the vertical escape pipe issuing out of the top of the air separating chamber. This down slanting pipe connects with a vertical stand pipe, the upper outlet of which is to the atmosphere and the lower outlet of which is to the gasoline reservoir beneath the ground. Thus the air released from the air separating chamber reaches the atmosphere through the vertical stand pipe, and any liquid escaping through the top of the air separating chamber flows down the stand pipe back to the storage tank. Any gasoline which is in a vaporized form and becomes condensed into liquid before it escapes from the outer vent of the stand pipe flows down into the reservoir.

In the air separating chamber is a float valve which operates upon the opening at the bottom of that chamber. When there is no liquid in the air separating chamber, the float is low and the valve closes the lower opening of the chamber, so that the first liquid which enters the air separating chamber does not immediately flow out of the lower opening to the meter. In this way, air ahead of the column of liquid being forced into the air separating chamber

makes its exit through the top of that chamber.

When there is enough liquid in the chamber to raise the float a sufficient height to open the valve leading to the lower pipe, the air ahead of the column of liquid has been virtually cleared out. Air in the gasoline rises out of the liquid in the air separating chamber and escapes out of the upper vent. In the Griffith reissue patent this upper vent is described as a constantly open fixed size small bore gas discharge port. The plaintiff asserts that the constantly open fixed size small bore discharge port is an advantage, in that the air may always escape, and problems of expansion of the liquid and air in the chamber are thus met and solved.

The Lanser reissue patent has a suction pump to move the gasoline from the storage tank to an air separating compartment. The liquid enters the separating chamber through an opening near the top of one of its sides. This chamber has an opening at the bottom into a pipe leading to calibrated measuring reservoirs positioned above the level of the separating chamber. On the side of the separating chamber near the top and about opposite the opening through which the liquid enters the separator is a float chamber communicating at its bottom through a narrow passage with the liquid in the separator. At the top of the separating chamber is a gas discharge passage which opens into the top of the float chamber, at which point there is a conduit leading from the top of the float chamber. The opening into that conduit is preferably controlled by the float in the float chamber and a needle valve. The gas and whatever liquid may escape goes through the latter conduit horizontally above the top of the separator and then down into what is called a recovery chamber. The recovery chamber is in essence another separating chamber.

The recovery chamber has two openings, one near the top of one of its sides into a vertical stand pipe which communicates with the atmosphere, and the other at its bottom. Air escapes through the vertical stand pipe. Any liquid in the air may flow down that vent pipe back into the recovery chamber. In the recovery chamber is a float which operates a valve controlling the opening in the bottom of the recovery chamber, which leads into a pipe which empties into the pipe between the reservoir and the pump; that is to say on the suction side of the pump.

When the apparatus is not being operated, the liquid in the pipe ascending from the bottom of the air separator to the calibrated measuring reservoirs produces a back pressure in the separator tending to force the liquid contained in the latter past the valve in the top of the float chamber into the horizontal pipe above the air separator and down into the recovery chamber, from which it may flow down the pipe to the suction side of the pump. Siphoning of this back pressure liquid into the supply reservoir is prevented by a valve below the pump. The patent states that the valve in the top of the float chamber is rarely entirely leak-proof, so that liquid forced past it has hitherto been lost, but that it is now recovered by operation of the recovery chamber and the conduit leading therefrom to the suction side of the pump.

It will be noticed that in both the Griffith and Lanser structures the opening for air and any entrained liquid is restricted,—in the Lanser structure by a valve which "is rarely entirely leak-proof" and in the Griffith structure by the small bore of the opening.

Plaintiff says (Br. 5) that claims 6 and 17 of the Griffith patent, and claims 3 and 5 of the Lanser patent, are representative claims.

Claim 6 of the Griffith patent specifies the combination of the supply tank, a separator having a constantly open fixed size small bore gas discharge port, and a liquid discharge port, means for passing the liquid from the supply reservoir to the separator, a stand pipe for separating the liquid from the gas passing through the gas discharge port, said pipe communicating with the gas discharge port, and, at its outer end, with the atmosphere, and a liquid recovery chamber communicating with the inner end of said pipe.

Claim 17 includes everything that claim 6 specifies, and, in addition, the remainder of the whole dispensing system from the reservoir at one end to the nozzle at the other.

In the Lanser patent, claim 3 is the more inclusive claim. Claim 5 describes the pump and separator with more detail, and does not include the additional items. Plaintiff (Br. p. 9) describes claim 5 and then says (p. 11) that the other Lanser claims are along the same lines.

Since the principal contention is that the patents are invalid, I shall first examine some of the prior art references.

Bowser, Cut 752, and Air Release, Cut 753–A, and Bowser Service Station Installation, used by the plaintiff in 1916, are relied upon by defendant as anticipation of the patents in suit. Diagrams are shown in Defendant's Exhibit 64, vol. 1, pp. 2 & 3. Pictures, diagrams, and descriptions are set forth on pages 154 and 155 of Volume 2 of "Copies of defendant's exhibits", which refer to Defendant's Exhibit 12.

Plaintiff (Br. 16) says that this was a fairly good air separator. Its operation was very similar to that of the Griffith device. There was a reservoir or supply tank from which gasoline was pumped into an air separating chamber. The chamber contained a float which controlled a sliding valve at the mouth of the air vent in the top of the separating chamber. That air vent connected with a stand pipe, or with a pipe back to the supply tank, or with a pipe to an outside receptacle. It did not contain the Griffith constantly open small bore fixed size gas discharge port, but, as above stated, that port was subject to the action of the sliding valve. It did not include the recovery chamber with its float in the system of pipes between the gas discharge port of the air separating chamber and the supply tank. Neither did it return the recovered liquid to the suction side of the pump.

On page 3 of Defendant's Exhibit 12, concerning the Bowser device, it is said that when the air release is used, the exhaust pipe leading from the top of the air-separator must be connected to the tank or to the vent pipe. Plaintiff suggests that in hot weather the pressure due to expansion would burst sight glasses and hoses, and that when Griffith eliminated the sliding valve and substituted therefor the constantly open hole, this problem was solved. Defendant replies that there is not a word about this in the Griffith patent.

Defendant further points out that the liquid could force air ahead of it and out through the gas discharge port as long as the float in the air separating chamber was low; so that at the beginning of dispensing, the release acted as does the Griffith opening. It further suggests that air would rise to the top of the air separator, thus lowering the surface of the liquid so as to open the valve. Also that in practical operation, an equilibrium would be reached in which the separated air would hold the float down so that the valve would be open "just the right amount". Also that the valve leaked, so that if too much liquid was in the chamber it passed with the air through the valve into the stand pipe.

Plaintiff contends that this is mere theorizing; the valve actually opened when enough air had accumulated to actuate the float, and closed immediately as the liquid level rose. Defendant contends that the only situation which Griffith met was that presented by the complete emptying of the inner small compartment of the large supply reservoir. In that situation the air pressure would keep closed the valve through which additional liquid could enter the inner compartment. In the absence of any liquid in that smaller compartment the air itself would go through the pipe system. In order to prevent the air going to the meter through the opening in the bottom of the air separating chamber, Griffith used a float valve. When there was not enough liquid in the air separator to raise the float, the valve controlling the opening at the bottom to the meter would close and the air would escape through the air vent at the top of the air separator.

It does seem that the Bowser 1916 devices bore a marked resemblance to the patents now before the court. The expedient of doing away with the sliding valve altogether seems to be merely an exercise of mechanical skill. It is the equivalent of making a small hole larger or removing an obstruction from a small hole. Thereafter if any liquid escaped through the open hole, it would be merely a mechanical problem to have a bucket or receptacle at the end of the exit pipe to recover any liquid which might flow through it.

Mulligan patent 1,119,980 issued to plaintiff on December 8, 1914, is similar to Bowser, Cut 753–A. Plaintiff suggests that the Mulligan device contains a float operated valve, so that it is not a constantly open or fixed size or small bore vent, and that a constant stream of liquid does not pass through it during dispensing, such as is specified in the Griffith claims. Plaintiff contends that so long as a valve closed orifice is used, the danger from burst hoses and sight glasses is always present.

The observations made with regard to the Bowser devices of 1916 apply here.

MacLeod British patent 256,407 issued in 1926, covered a separator. It is illustrated in the diagram on page 4 of Defendant's Exhibit 64. At the air vent in the top of the separating chamber was a valve. Air ahead of the advancing liquid escaped

through this open valve. When the valve closed with the rise of the liquid in the chamber, there was still an opening left consisting of a small permanent hole drilled in the valve itself, which continued to permit the escape of air and liquid during the dispensing operation. MacLeod therefore had at all times the small opening in the valve itself and also, when the valve was opened, the space around the periphery of the valve.

This patent was for the separator itself. It was not combined with the Lanser recovery chamber with the return to the suction side of the pump. The valve when open was larger than the permanent opening of Griffith or the restricted opening of Lanser. Plaintiff suggests that if the large valve ever became stuck or held open, liquid gasoline would be discharged from the air vent, making the modern service station pump both dangerous and inoperative if equipped with this type of separator.

There does appear here at least the fixed constant size opening, in the valve itself. The same thought seems to be present as in the Griffith device. Any development seems rather the result of mechanical skill than inventive genius.

Martini & Huneke German patent No. 443,564, issued May 3, 1927. This is illustrated on page 5 of Defendant's Exhibit 64. This device avoids the use of any valve. In the top of the separator is a constantly open small hole leading into a narrow pipe which is connected with the supply tank. Plaintiff contends that the vent pipe is of a constant diameter from the top of the separator to the storage tank; that there is no constantly open fixed size gas discharge port nor any restricted orifice between the separator and the pipe; that there is no stand pipe; and that this patent makes no mention of a recovery chamber or any float controlled valve and return to suction, such as the Lanser device.

Of course this patent does not show the combination with the stand pipe. Neither does it show a recovery chamber nor a return to suction. But so far as the gas discharge port is concerned, it does seem to me that the patent contains the constantly open fixed size small bore discharge port.

Plaintiff however suggests that the issuance date of May 3, 1927, makes this patent too late to anticipate Griffith.

S. A. T. A. M. French patent No. 559,998 issued June 27, 1923. This is illustrated in the diagram on page 6 of Defendant's Exhibit 64. The separator has a small opening at the top similar to Griffith's for the escape of air into a pipe which leads into a liquid recovery chamber similar to that of Lanser. Beyond the recovery chamber is another pipe through which the air escapes. At the bottom of the recovery chamber is a float controlled valve in an opening to a pipe leading to the suction side of the pump, as in Lanser. The hole or opening at the top of the separator seems to be an almost perfect anticipation of the opening in Griffith.

Plaintiff contends that the French patent does not specifically say that the hole in the top of the separator is a restricted orifice. An inspection reveals that it is a small opening. Its purpose is the passage of air.

Plaintiff also contends that the patent does not show a vent pipe open to the atmosphere. The patent does show the air vent from the separator to the recovery chamber with two openings from the recovery chamber, one to the suction side of the pump and the other to a pipe for the escape of air. The end of that pipe is in the top of a chamber which holds gasoline. Defendant argues that foreign patents in order to constitute an anticipation, must clearly disclose what is relied upon as anticipation.

It would seem reasonable to say that since the very purpose of the whole device is to separate air, the separated air must be allowed to escape, and that the end of the air pipe must lead to the atmosphere. However that may be, even if the end of the pipe does not open to the atmosphere, it would not in my opinion be invention to make this pipe open to the atmosphere.

Bargeboer, No. 1,745,000 issued January 28, 1930, on application filed May 7, 1928. Corresponding Dutch patent 20,832 was applied for on July 29, 1927. This patent is illustrated in diagram on page 7 of Defendant's Exhibit 64.

The inlet pipe from the pump extends up through the bottom of the separator and discharges its contents in the upper part of the separator. In the top of the separator is a small opening into a pipe, whose diameter is markedly constricted a short distance beyond the opening, so that at the point of constriction it furnishes only a small fixed hole. Beyond that point the pipe resumes its first diameter and after extending in a horizontal direction turns vertically downward. This pipe connects with the supply

tank, but about two-thirds of the way to the supply tank there is a curve in the pipe and a vent to the atmosphere. The small constricted hole is the same as the Griffith constantly open fixed size small bore gas discharge port. The air escapes through this hole. The narrow hole chokes off the free outflow of liquid. Any air and whatever liquid does go through it passes along the pipe and vertically downward to the vent, where the air escapes and the liquid enters the last segment of pipe to the tank. If any air gets into the tank the tank itself is like a recovery chamber, the air in it coming to the top and passing out of the vent just mentioned. As in the Griffith stand pipe, the vertical portions of pipe permit any gas in the air or vapor to condense and flow down the vertical pipe into the tank.

Plaintiff contends that this does not show a stand pipe which is open at its outer end to the atmosphere; nor a liquid recovery chamber communicating with the inner end of this pipe, all as specified in Griffith. Plaintiff further contends that the separator inlet opening is not of relatively very small cross sectional area as compared to the horizontal cross sectional area of the separator as specified in Griffith reissue claims 19 and 20. Further that it shows no float control return to the suction side of the pump as in Lanser. Plaintiff's brief states that this only one of 86 references found by defendant which shows a constantly open fixed size small bore gas discharge port, and even if based on the Dutch filing, is not early enough, and if it is early enough, plaintiff proved that it will not satisfactorily separate air.

In my opinion, so far as the Griffith patent is concerned, what has hereinabove been said sufficiently answers the above contention. So far as the float control return to the suction side of the pump is concerned, it may be conceded that the Bargeboer patent does not have those elements.

The patent in my opinion describes a structure strikingly similar to that of Griffith. The evidence as to operation referred to by plaintiff does not in my opinion have the effect which plaintiff claims for it.

In support of the allegation, in connection with discussion of the Bargeboer patent, that Griffith conceived his invention in January, 1927, and made a full sized machine in February, 1928, plaintiff cites its Exhibits 21, 22 and 35 and Defendant's Exhibit 31. Defendant shows that Plaintiff's Exhibits 21, 22 and 35 purport to be blueprints of the plaintiff company dated March, 1928. They therefore do not carry the Griffith date back of that time. Defendant's Exhibit 31 is a certified copy of Griffith preliminary statement in the Griffith-Lanser interference proceeding in the patent office. It was introduced by defendant as a part of the interference record. The statement as to date contained therein does not in my opinion prove the date.

I am of the opinion that the Bargeboer patent is at least sufficient in connection with the other patents to show the state of the art. It is but another exemplification of the use of the elements here involved.

Clamer 1,338,814, issued May 4, 1920 (Volume 2 of copies of Defendant's Exhibits, p. 29). This patent contains no distinct chamber to act as a separator. It has a main circuit and a branch circuit of pipes. The air takes the direct route of the main circuit until it encounters a valve which checks or restricts the passage but permits the escape of the air and a small amount of liquid into the pipe beyond the valve leading to the tank. The length of the passage up to the choke is sufficient to take care of the column of air in the pipes ahead of the liquid. The liquid, following the column of air, meets the pressure caused by the choke and takes the branch circuit of pipes to the meter. Beyond the valve in the main circuit the pipe leads to the tank. The air rises to the top of the tank and escapes through a vent pipe opening to the atmosphere. The patent specifically states that the valve may be replaced by "restriction of the passage to a smaller cross-section than that conveniently handled by the pump". The device here—a small hole—would have the same function as Griffith's small hole.

Plaintiff contends that this patent does not show a displacement meter and an indicator, an open stand pipe, and any return to suction. The displacement meter is in my opinion a separate and distinct element. It is true that there is no open stand pipe as in Griffith. The air, however, escapes through the vent pipe from the tank. If the air in the pipes before it reaches the tank contains any vaporized gas, there is ample opportunity for condensation or precipitation of the liquid in the pipe. If there is any vaporized gas entrained with the air which escaped through the vent pipe leading from the tank, the vent pipe is high enough to permit any condensed or pre-

cipitated liquid to flow back to the tank. There is no return to suction as in Lanser.

This device received the approval of the Pennsylvania State Inspector and was used in that state. Plaintiff itself purchased the patent and sold the pumps made under it.

Jennings, 1,591,388, issued July 6, 1926. A diagram of this device is shown at page 8 of Defendant's Exhibit 64. The patent itself appears on page 53 of Volume 2, being copies of exhibits referred to in defendant's briefs. The air separator has two openings, one at the side to the liquid outlet and the other at the top for the passage of air. The opening at the top is a restricted orifice which permits the free passage of air but chokes or offers a substantial resistance to the passage of liquid. In the pipe system leading from the restricted orifice, the Jennings structure has an additional pump which keeps the air and any liquid with it flowing to a recovery chamber or return separator. In the top of the recovery chamber is a vent pipe leading to the atmosphere for the escape of air, and in the side of the recovery chamber or return separator is an opening leading to a downward pipe to the supply reservoir. Defendant contends that this patent describes the use of restricted orifices having the function of separating air and liquid, as does Griffith.

The Clear Vision Pump Company's Crouse patents Nos. 1,466,273 of August 28, 1923, and 1,650,192 of November 22, 1927, show a return of overflow liquid to the suction side of the pump rather than to the supply tank and the avoidance of a return pipe to the tank itself.

In the recent case of Benjamin Electric Mfg. Co. v. Bright Light Reflector Co. et al., 7 Cir., 111 F.2d 880, 882, decided on May 15, 1940, our Circuit Court of Appeals said: "Trivial modifications of process or products do not show invention. Rosenberg et al. v. Carr Fastener [Co.], 2 Cir., 51 F.2d 1014. And even though no one previous patent or device employs all the mechanical features disclosed by the patentee unless assembling of the features of the prior art constitutes invention, the patent is invalid. General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 104 F.2d 553. Any patented device, all of the elements of which are old and each of which performs the same function taught by the prior art, fails as an invention. Higby v. A.B.T. Mfg. Co., 7 Cir., 93 F.2d 73; Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799;

M. H. Detrick Co. v. Chicago Fire Brick Co., 7 Cir., 95 F.2d 455. We believe that Benjamin exercised mere mechanical skill."

The above opinion carries forward the holdings of the Supreme Court in Lincoln Company v. Stewart-Warner Corp., 303 U. S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, and Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005.

I find that the plaintiff's patents are not patentable inventions but constitute mere aggregations. Each element performs its usual function. The prior art put these elements together for devices very similar to those of the patents. Whatever changes or modifications are shown by the patents in suit, are, in my opinion, at most the result of mechanical skill rather then inventive genius.

I conclude that the claims in suit are invalid under the prior art.

This conclusion makes it unnecessary to consider the remaining contentions.

The bill is dismissed.