## FULTON BAG & COTTON MILLS v. WERTHAN BAG CO.

Circuit Court of Appeals, Sixth Circuit. November 12, 1928.

No. 4993.

Will T. Gordon, of Washington, D. C., and F. M. Bass, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., and Shreve, Crowe & Gordon, of Washington, D. C., on the brief), for plaintiff in error.

M. P. O'Connor and Louis Leftwich, both of Nashville, Tenn., for defendant in error.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. ■ Suit for infringement of patent No. 1,522,928, issued to Wiggins on November 13, 1925, for "method and apparatus for producing resilient printing plates." The court below held the patent invalid. It had been customary to use stereotype plates for printing designs upon

fabrics. Where these were rough and soft like jute or hempen or coarse cotton bags, inferior printing resulted. Wiggins desired to make a printing plate which should be hard enough to withstand long usage in a printing press yet resilient enough to compensate for the irregularity of the fabric's surface and maintain a sharpness of impression. In its perfected form and as used by his assignee, the plaintiff, the method and its results were these: Having a positive plate like an engraving on steel, he applies a layer of paper tissue backed by coarser paper pulp. This absorbent material he then, by beating or pressure, forces into the design of the positive plate. He then flows molten metal over the back of this absorbent material and allows it to set, in the form of a thin sheet. The metal and the absorbent material being thus united, they are moved from the positive plate and constitute a negative mold or matrix. He says: "The new and metal reinforced negative mold resulting from this procedure is unaffected by heat or extreme pressure, and it may be employed indefinitely in reproducing the original cut, cast or plate." Upon the face of this matrix he places a sheet of soft rubber; upon the back of that, wire netting and heavy canvas. All these parts are then put in a press and, under high degrees of heat and pressure, the rubber sheet is impressed and vulcanized so that it becomes a flexible printing element in the positive form, presenting a somewhat resilient face. The evidence shows that printing plates thus made, and with the degree of heat and pressure which plaintiff uses, are very efficient and will make, upon coarse fabric, a sharp reproduction of even a half tone plate, and will print without blur or apparent wearing several hundred thousand impressions. The patent purports to give protection by a number of claims, some to the method and some to the product. There were no references in the Patent Office, except some prior patents which were easily and rightly distinguished from the claims allowed. The questions chiefly litigated in this case arise from the early use of a more or less similar method and printing element at Nashville, by a firm engaged in manufacturing and printing flour bags and similar articles. Judged even by the critical standard appropriate to such cases, the proof is convincing that this Nashville use was in existence long before Wiggins' invention, and that it discloses a printing element which fairly anticipates those of Wiggins' claims to such element which are sued upon. Witnesses testify to this use, the existence and date of which can hardly be disputed, and they produce two or three of the original printing plates. These are sufficiently identified as having been in extensive use 10 or 15 years before Wiggins. The sufficiency of this testimony is attacked only so far as it concerns the extent and the quality of the printing which these plates were able to do. No specimen of the actual printing of those days is produced; the claim that it was of the high quality shown by plaintiff's present practice depends only on the recollection of witnesses; and in so far as that high quality and great capacity might be a vital point of an anticipation, we are not prepared to accept the testimony as sufficient; but in so far as any product claim is said to be limited to those distinguishing characteristics, we can find no words apt for such limitation. For example, it is specified that the element is "capable of withstanding extreme pressure without permanent distortion," or "possesses inherent properties of resiliency and hardness in sufficient degree to secure a clear non-blurred imprint on the fabric." Not only are the indeterminate adjectives of quality subject to the criticism pointed out in Holland Co. v. Perkins Co., 277 U. S. 245, 48 S. Ct. 474, 72 L. Ed. ——, but they do not distinguish from the Nashville use. The product claims are thus invalid; method claim 10 is likewise anticipated.

Method claim 22 is further limited. It is quoted in the margin.[1] Evidence of its infringement is found in the stipulation that "defendant admits the manufacture and sale of printing plates of the character described and claimed in patent No. 1,522,928, and submits herewith samples of same to be used as evidence at the trial, but denies liability for infringement on the ground that said patent is invalid." No suggestion is found in the record or argument that defendant's method of manufacture differs from that described in the patent, or that any of the claims sued upon is not to be considered as infringed if the patent is valid. We are therefore justi-

[1] "22. A method of producing a printing member for fabric-bag printing presses, consisting in forming a body of plastic rubber, applying to one side of the rubber a mold having a non-metallic design-bearing matrix material reinforced by a solid metal-backing and then subjecting the assembly to the action of heat and pressure in sufficient degree to enhance the inherent properties of hardness and resiliency of the rubber to the extent necessary to insure a clear non-blurred imprint on the fabric when the member is subjected to the pressure incident to its usage in the press."

fied in considering this stipulation to apply to claim 22. It appears that in the Nashville use, a plastic compound was made up of plaster of paris, with some other ingredients; that this was laid upon an iron base or table and the positive plate then pressed into it, forming the negative mold or matrix. The remainder of the process was the same as plaintiff's, except that the pressure was that produced by a hand press with appropriate moderate heat, while plaintiff now uses extreme heat and a pressure of 400 pounds to the inch. The claim does not specify the degree of heat or pressure, and the results named in the claim are so far relative that they are not specific identifying means. There is, however, a distinct difference between the specified method of making the negative mold and the Nashville method. The use of paper as a matrix-forming material in stereotyping was not new, but there is nothing to show that such matrix had been used with a backing sheet of metal so as to constitute a unitary paper faced but metallic backed matrix mold capable of using in the next step of the patented process. The proofs seem to show that the metal backing is essential to enable the matrix to withstand the extreme pressure which is within the contemplation of claim 22, and which is essential to get the most satisfactory commercial results. The proof is that it would be impossible to use any such degree of pressure with a plaster of paris matrix, nor does it appear that the plaster of paris composition matrix used in the Nashville process was ever permanently united with a metallic reinforcing back, so that it became a matrix capable of resisting any high pressure. It was rather the well-known material for a mold or matrix for making soft rubber stamps, and it is fairly to be inferred that the Nashville use did not carry pressure and temperature high enough to develop the necessity for the pressure-resisting matrix and backing.

We are not inclined to regard the call of claim 22, if interpreted by the entire specification, as satisfied by the Nashville use of plaster of paris, resting on a metal base. True the only express limitations of the claim are that the matrix material should be design-bearing and nonmetallic, but the specification says that this composition—"usually comprises an absorbent material coated with an adhesive and having superimposed tissue"; and the insistence of the claim that this matrix should be "reinforced by a solid metal backing," so that it could form part of the assembly finally going into the press for vulcanizing, fairly indicates that the common plaster of paris rubber stamp mold was not intended.

Our conclusion is that there should be the usual decree for injunction and accounting, based on claim 22, and also on claim 15, which is not, as to validity, materially different. We think the case appropriate for the fixing of a reasonable royalty or compensation for each instance of employing the method of these claims, and that the profits realized by the defendant or the damages suffered by the plaintiff through the use of the printing element produced by this method are too remote to form an accurate measure of liability; though, of course, the value of such use of the element, actual or prospective, would bear upon the proper compensation to be allowed for the infringing manufacture.

The decree is reversed, and the case remanded for further proceedings.