## UNITED SHOE MACHINERY CO. v. MATHEY.
### No. 3065.

District Court, D. Massachusetts.

Sept. 5, 1930.

Alex D. Salinger and Fish, Richardson & Neave, all of Boston, Mass., for plaintiff.

Richard F. Walker and Roberts, Cushman & Woodberry, all of Boston, Mass., for defendant.

MORTON, District Judge.

These are three suits for infringement of three different patents, viz.: No. 1,406,-335 to Boulton dated February 14, 1922, for lining-trimming machine; No. 17,112, reissue, to Smith dated October 23, 1928, for lining-trimming machine; and No. 1,700,624 to Boulton dated January 29, 1929, for lining-cutting machine. Two different types of machines are involved. Those described in the first two patents are used to trim the lin-

ing around the edges of the uppers of shoes, especially of women's pumps; while the machine described in the last patent is used to cut and trim openings, or "panels," in the uppers of such shoes.

The commercial demand for both machines arose out of a change in style of women's shoes which followed the advent of short skirts ten or twelve years ago. The lighter and weaker leather used in such shoes is not strong enough to stand the pull of lasting without being drawn out of shape. It therefore became necessary to utilize the strength of the lining in the lasting operation, and to leave a projecting edge of it for this purpose. Fashion also demanded panels of various shapes and sizes, and for the reasons stated, these could not be cut until after the shoe had been lasted. The problem was thus presented of trimming the edges and cutting panels in a lasted shoe of relatively small size.

Shoe machinery is a very crowded art; and this is true of the particular phase of it to which the present patents relate. All the machines in question belong to the sewing machine genus; i. e., they involve essentially a head carrying a reciprocating tool, and a support having coacting mechanism on which the work is rested.

As to the first Boulton patent, the edge-trimming machine: The decisive question on this patent is whether it shows novelty and invention over the prior art. More than thirty years ago, a sewing machine was adapted for edge-trimming by equipping it with a chisel-like knife, reciprocating like the needle and cutting against a sharp lower edge called a "shear" in the bed plate; it had a presser-wheel like that of Boulton (see Neely patent No. 628227, July 4, 1899). This machine sewed the lining to the upper and trimmed the edge on an undercut slant. A combined separator and guard applicable to all such machines is shown in the patent to Fien & Harrison, No. 616306, December 20, 1898. In this Boulton patent the knife runs vertically and the work is slanted; in the old machine the knife was slanted and the work was flat. The patent is not directed to the mechanical readjustments which this change involved. There is otherwise no patentable difference between slanting the work and slanting the knife. This old machine with the needle removed can still be used commercially for edge-trimming flat uppers; on account of the flat table it cannot be used on a lasted shoe. By substituting for the table an arm which can be introduced into a shoe, it is suitable for edge-trimming completed shoes

of the larger sizes, and for many parts, but not all, of small pumps. Long before 1900 sewing machines with such arms were in common use. They are shown with various kinds of supports, e. g. round arm, small post, etc., in the early Wheeler and Wilson catalogue in evidence. It may be said that before 1900 the art was highly developed in the way of supports for shoes which were being worked upon machines of the sewing machine type; little or nothing has been added since, except the revolving underslung support of the second Boulton Machine.

Most of the claims of this patent are precisely readable on the old Singer machine, having a slanting cutter and a round lower arm carrying a shear, which was offered in evidence. It completely anticipated the slanting along the seam by a reciprocating knife acting against a shear held in the support; and it does not differ substantially, either in mode of operation, or in the result accomplished, from the machine of the patent. In my presence this old machine trimmed the edge of a large overshoe as well as the plaintiff's machine; on account of the large size of the arm it cannot be used on small shoes.

The claims in suit are either completely anticipated by the prior art or required no inventive step. The merits of this patent—if legally speaking it has any—have been greatly exaggerated by the plaintiff. The difficulty with which Boulton was dealing in designing this machine was due only to the small size of the new pumps. He got around it by taking the old Singer trimming machine adding the old guide and guard for the cutter which was common in the art, and using the support from the old Singer hat-sewing machine (see Defendant's Exhibits I, P, Y, and Q). This sort of combining in a crowded art is rarely invention. It is oftener, as here, the natural perfecting advance of an art to meet new needs, something which ought not to be interfered with by patents.

■ On all the evidence, I find and rule that the Boulton patent No. 1,406,355 is invalid for lack of novelty and invention.

As to the Smith patent: The step which this patentee took was to substitute, for the straight shear of the prior art, one consisting of a round disc, like a button set up edgewise and sharpened on the edge. The reciprocating knife acts against the sharpened edge to cut the material. This round shear has several advantages over the old straight type; especially it makes the machine more flexible, i. e., sharper curves can be accurately cut on

it than was possible with the straight shear. I have no doubt that it involved meritorious invention. The defendant has appropriated it bodily.

The only real question under this patent is as to infringement, i. e., whether the defendant's machine is covered by the claims. In the patent the round shear knife is described as so loosely mounted that it rotates as the work is passed over it, and the reciprocating knife, is arranged to contact with the round shear in an off-center, or partly tangential, direction, so that the friction between the two will also make the shear revolve.

In the defendant's machine substantially the same round shear knife was used; but the cutter is not placed off-center and, as the defendant's machine is put out, the shear is rigidly fastened and does not revolve in the operation of the machine. It can be made to do so by slightly loosening the holding pivot. The plaintiff contends that this change is made as a matter of course by users of the defendant's machine. But the evidence does not show this to be the fact. The defendant asserts that his machine will only function properly as long as the shear is firmly fastened. In support of this he points out an apparently minor, but he says important, difference in the construction of the two machines at this point, viz., that in the plaintiff's machine the shear is supported from the side away from the cutter, so that as it loosens on its support it can move only toward the cutter, thereby increasing the closeness of the cut. In the defendant's machine, on the contrary, the shear is supported from the side toward the cutter, and a loosening of the support allows it to leave the cutter and interferes with the cut. It seems clear, however, that the defendant's machine does operate when the shear is loose enough to be rotated manually.

■ As the inventive idea of the patent has unquestionably been appropriated, the claims ought to be so construed as to protect the patentee, if the language used will fairly permit such a construction. Each of the claims contains as an element a "rotatable shear." This means rotatable in the sense used in the specifications. On this point the specifications say on page 2, lines 55 to 69: "The latter characteristic aids in the rotation of the shear member by the work, a result which is also facilitated by the fact that the guide 17 of the knife is off-center with respect to the vertical median line of the shear member. When, as sometimes happens, the shear member 19 is prevented from turning automatical-

ly either by tight connection with its supporting bracket 41, or by dirt or fuzz wedged into a crevice between it and its pivot or the bracket, the sharp segments of the shear member may be placed successively in operative position by turning said member manually, from time to time, as occasion requires." The ability of both shears to rotate depends only on the tightness of the fastening. They are absolutely alike, both in principle and construction, except for the difference in mounting. If the supporting screw of the defendant's shear becomes loosened, either accidentally or intentionally, his shear can be rotated so as to change the point of contact on the cutting edge. The patent contemplates that the shear in the patented machine may stick or bind and have to be rotated manually.

I have no doubt that in the daily operation of the defendant's machines if the shear gets dull, it is loosened and rotated to present a new edge. In other words, the rotatability of the shear is taken advantage of in the customary operation of the defendant's machine; and I so find. In my opinion, this brings defendant's machine within the claims of the patent. On all the evidence I so find and rule. It follows that there must be a decree for the plaintiff on the bill on this patent.

As to the second Boulton patent: Two alleged improvements in panel-cutting machines are described in this patent, viz., a new form of shear and cutter, and a new method of mounting the support. It is unnecessary to go into the first, because, as I said at the conclusion of the arguments, I have no reasonable doubt that the idea of the circular shear and curved cutter was first conceived by the defendant and communicated by him to Boulton. At the earnest request of counsel for the plaintiff, I have carefully re-examined this finding in the light of the transcript of the testimony. So considered, it is Boulton's denial against Newman's testimony that he was present at a talk between Boulton and Mathey, at which the latter described his idea of a circular shear and curved cutter to them both, and Mathey's testimony to the same effect, in connection with Flynn's testimony that Mathey described the idea to him at about that time; this direct testimony being supported by corroborative evidence. To this must be added the vivid impression which I had at the conclusion of the arguments (which immediately followed the close of the evidence) that Boulton was untruthful in his denial. My conclusion on this point remains unchanged.

Certain of the claims in suit do not involve the shear and cutter, but are directed exclusively to the underslung support. As to these, Mathey stands in no different position from any other defendant. The underslung support of the patent is not used in the defendant's machine. Its supporting arm is nothing but the old McKay "horn," slightly modified in shape in a manner not involving the least invention. These horns were rotatable in their support on a vertical axis. To mount a shear on such a horn instead of on an arm or a post certainly did not require the exercise of the inventive faculty. If these claims be construed to cover the defendant's machine, they are void for lack of novelty and invention in view of the prior art; if they are confined to the support shown in the patent, they are not infringed.

I might add that both these Boulton patents are rather striking examples of a sort of patent in which an invention, or alleged invention, is used as a cloak to run in claims covering fields of the art clearly open to the public, and in that way to gain an unfair advantage for the patentee.

The bill on the Boulton patent No. 1,700,624 must be dismissed.

Decrees accordingly.