UNITED SHOE MACHINERY CORPORATION v. MATHEY.

No. 3622.

Circuit Court of Appeals, First Circuit.

Feb. 6, 1941.

Harrison F. Lyman, of Boston, Mass. (H. L. Kirkpatrick, A. D. Salinger, and Fish, Richardson & Neave, all of Boston, Mass., on the brief), for appellant.

Richard F. Walker, of Boston, Mass. (Roberts, Cushman & Woodberry, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal by the defendant from an interlocutory decree of the District Court holding valid and infringed claims 2, 4 and 16 of patent No. 1,807,996, applied for May 27, 1929, and issued to the plaintiff June 2, 1931, and ordering an injunction and accounting with costs. The lower court held that claim 40 was invalid, and the plaintiff did not appeal from that portion of the decision. Subsequent to the entry of judgment, the plaintiff filed a disclaimer as to claim 40, and it is no longer a part of the patent.

The alleged infringing machine is made in two models, D and G, and is based on patent No. 1,963,071 which was applied for October 20, 1931, by George Boulton of Rochester, New York. The rights to this application were assigned to the defendant, United Shoe Machinery Corporation, and the patent was issued June 19, 1934. The defendant denied infringement and the validity of the plaintiff's patent.

The specification in the plaintiff's patent recites that: "This invention pertains to the manufacture of footwear and relates more particularly to apparatus for trimming the breast covering flaps of wood heels. In making shoes with wood heels it is usual to skive up a thin flap from the rear portion of the outer sole and after the heel has been secured in position, this flap is cemented to the breast surface of the heel, thus forming a smooth finish for the latter. Since the contour of the heel seat portion of the outer sole is not like that of the breast surface of the heel, it is necessary, after the flap is attached to the heel, to trim off the surplus material of the marginal portions of the flap." For many years this operation had been performed by hand after the shoe had been practically completed. The workman

with a hand knife trimmed the breast flap which had been cemented to the attached heel. Causing injury to the shoe at this point in trimming operation would result in damage to the shoe and prevent its sale as a finished product. To overcome this costly hand operation by a mechanical process, at least five prior attempts had been made, as evidenced by previous patents. None of these was successful or placed on the market for use in the trade. In the middle or latter part of 1929, the plaintiff put on the market the machine which embodied his invention. It was described as the Hamlin Economy Wood Heel Flap Trimmer, Model B, and it met with considerable commercial success.

The District Court found that the plaintiff's machine has a "rotating shaft which, by means of an eccentric, oscillates to the right and left the upper end of a driver bar. To the driver bar is pivotally attached a blade carrier, and to the latter a cutter, blade, or knife is attached as an integral part of it in such a way as to form a V-shaped recess between the blade and the carrier extending in the direction of the movement of the blade. The movement of the knife is not mathematically or exactly in the direction of the cut as it swings in a slightly curved path or arc. It swings exactly in the direction of the cut at only one theoretical point in the arc. However, the cutting movement of the knife is directed by the mechanism into the work substantially and for all practical purposes in the direction of the intended cut; in this case, along the edge of the Louis heels. The cutting is effected solely on the forward stroke of the knife, the forward travel on each stroke being about one-eighth of an inch and the machine being driven approximately 4000 strokes per minute (66-plus strokes per second). As the patentee says in this patent, 'the arrangement * * * is such that the cutter moves back and forth in the direction of the intended cut and not transversely through the material'. The work rest, conically shaped, is mounted in the machine below and to one side of the knife. The blade moves in close proximity to the upper surface of the work rest, the purpose of the latter being to support the breast surface of the heel while the cutter is coming forward and the edge of it supports the work."

The claims in issue are numbered 2, 4 and 16, and read as follows:

"2. Apparatus of the class described comprising a reciprocating cutter adapted to remove surplus material from the breast covering flap of a shoe heel, and means for reciprocating the cutter in the direction of the intended cut."

"4. Apparatus of the class described comprising a rest for engagement with the breast surface of a shoe heel, an oscillating cutter having its cutting edge disposed in a plane intersecting the plane of the breast surface of a heel engaging the rest, and means for oscillating the cutter in the direction of the intended cut."

"16. Apparatus for trimming off surplus material from the breast covering flap of a shoe heel comprising an oscillating blade carrier, a blade mounted on the carrier, said blade having a substantially V-shaped recess extending in the direction of movement of the blade, one side of said recess constituting the cutting edge, and a work rest engageable with the breast surface of the shoe heel to determine the line of cut."

In support of its defense of invalidity, the defendant relies on the prior art. It cites a number of patents which are embodied in the so-called Barber Undertrimmer on sewing machines manufactured and sold by the Singer Sewing Machine Company of Newark, New Jersey. This machine is a combination sewer and trimmer and is used for stitching the upper and lining of the shoe together, while the trimmer at the same time trims the lining off back of the edge of the upper. It has been in use in shoe factories a great many years. It is in evidence that after the removal of the stitching mechanism, this undertrimmer could trim detached Cuban heels, but at no time was it shown that it could trim attached Cuban or wood heels, known as Louis heels. The problem to which the plaintiff directed his efforts was to trim breast covering of wood heels after the heel had been secured in position.

There was ample evidence to show that the Barber Undertrimmer Machine as at present constructed could not trim an attached heel, although there was also evidence that by certain modifications it might be so adapted. But that is not anticipation which invalidates a patent. Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658.

The plaintiff's invention was not anticipated by the British patent No. 175,511 issued to Kirton. This was a device for roughly rounding the heel seat of a shoe. In the British patent No. 271,588 issued to Adams, and in the American patent No. 1,578,293 issued to Spalsbury, there was in-

volved a cutter which moved transversely across the work and line of cut, with the cutting occurring with a stroke moving away from the heel. These latter two patents were cited against the plaintiff's patent in the Patent Office. It was then that an amendment was made to claim 2 by adding the words "means for reciprocating the cutter in the direction of the intended cut", and to claim 4, the words "in the direction of the intended cut", and to claim 16, the words "extending in the direction of the movement of the blade" after the words "V-shaped recess". Herein was the advance which the plaintiff made over the prior art.

The defendant also contends that the patent is invalid because the claims in suit are not limited to apparatus for trimming any particular kind of heel, as for trimming an attached heel as distinguished from an unattached heel. We cannot agree with this contention. In the first paragraph of the specification of the patent in suit it says: "In making shoes with wood heels it is usual to skive up a thin flap from the rear portion of the outer sole and after the heel has been secured in position this flap is cemented to the breast surface of the heel." The breast flap is a regular trade designation of a part of the outsole which necessitates the heel being attached before the breast covering can be cemented to it.

In claims 2 and 16 distinct reference is made to the "breast covering flap of a shoe heel" and in claim 4 to the "breast surface of a shoe heel". The claims here do refer to trimming of attached heels or so-called Louis heels, and are to be so construed. There is no conflict between the specification and the claims. The specification cannot broaden the claims, but it explains their meaning. Yale Lock Mfg. Co. v. Greenleaf, 117 U.S. 554, 559, 6 S.Ct. 846, 29 L.Ed. 952; Lanyon v. Detrick Co., 9 Cir., 1936, 85 F.2d 875; Walker on Patents, Deller's Edition, Sec. 261, p. 1242, and cases cited.

We think that the plaintiff's machine involves inventive faculty rather than mere mechanical skill and that he made a useful and important improvement in the shoe industry. Metal Cutting Tool Service v. National Tool Co., 6 Cir., 1939, 103 F.2d 581, 583.

The plaintiff's and defendant's machines are similar and the alleged infringement concerns only the cutting parts. The defendant's machine is built substantially upon the Boulton patent and is described by it as having a hook-shaped cutter which in cooperation with a fixed blade cuts like a pair of shears, except that the movement of the cutting blade is orbital. The defendant says its cutter moves continuously in a circle, that is to say, in no one direction, and it performs a transverse shearing movement.

It is true that the defendant's cutter moves in a circle, but it does not cut in this manner; most of the cutting is done when it moves forward in the direction of the material. The defendant's machine has a transverse shearing cut at the final portion of each cutting stroke, but it also has the longitudinal non-shearing stroke at the start of each cutting stroke, and it is this longitudinal non-shearing cutting stroke which is the basis of Mathey's patent. The forward stroke of defendant's knife through the first part of its orbital path does all the cutting, the remainder of the orbital movement is a backward stroke to resume cutting position and is non-functional. This movement of the defendant's knife constitutes a reciprocating and oscillating motion, and this is demonstrated in the defendant's own advertisement wherein the accused machine was described as equipped with an "oscillating knife".

The words "in the direction of the intended cut" in claims 2 and 4 are not limited in any way to an exact longitudinal movement but embrace any movement that would be substantially in the direction of the intended cut. These claims mean substantially in the direction of the intended cut and cover mechanism which functionally includes that motion as covered by the claims. Winans v. Denmead, 15 How. 330, 343, 14 L. Ed. 717; Aeolian Skinner Organ Co. v. Shepard Broadcasting Service, 1 Cir., 1936, 81 F.2d 392.

It is clear that the knife on defendant's machine at the start of each of its forward cutting strokes has the motion that has the functional value and benefit of the plaintiff's patent, because it is driven longitudinally into the work substantially as in the patent, and it is immaterial whether this is 1/32nd of an inch or larger, because mathematically it would have the same function proportionately whether it were large or small. The functional value is that it avoids the ragged edges of an entire transverse cutting movement with its tendency to pull

the flap from the heel, problems which the plaintiff's patent solved. The longitudinal cut at the commencement of each cutting stroke is present in the defendant's machine. The charge of infringement of claims 2 and 4 is amply sustained.

The defendant's machine also has substantially the same features as the plaintiff's machine. These features are set forth in claim 16 of the plaintiff's patent as "oscillating blade carrier" and "a blade mounted on the carrier, said blade having a substantially V-shaped recess extending in the direction of the movement of the blade". The cutting operation in the defendant's machine is a forward longitudinal movement and the V-shaped recess does extend in the direction of the movement of the blade. Claim 16 is infringed.

The disclaimer as to Claim 40 was not entered in the Patent Office before suit was brought, in accordance with the provisions of Revised Statutes, Sec. 973, 28 U.S.C.A. § 821. The plaintiff therefore is not entitled to costs in either court. John W. Gottschalk Mfg. Co. v. Springfield Wire & Tinsel Co., 1 Cir., 75 F.2d 907.

The decree of the District Court is modified by the vacation of paragraph 7 thereof awarding costs to the plaintiff, and as thus modified is affirmed.