## MATHEY v. UNITED SHOE MACHINERY CORPORATION.

No. 4448.

District Court, D. Massachusetts.

March 13, 1944.

Richard F. Walker and Roberts, Cushman & Woodberry, all of Boston, Mass., for plaintiff.

H. F. Lyman, H. L. Kirkpatrick, and Fish, Richardson & Neave, all of Boston, Mass., for defendant.

FORD, District Judge.

This case was sent to a special master to take and state the amount of damages which the plaintiff sustained and of the gains and profits which the defendant made by reason of the defendant's infringement of claims 2, 4, and 16 of plaintiff's patent No. 1,807,996, issued June 2, 1931, for a heel flap trimming machine. The history of the patent, the claims involved, and those found to be infringed, will be found in 32 F.Supp. 684, affirmed 1 Cir., 117 F.2d 331.

The master took as the commencement date of the accounting period, July 29, 1931, the date formal notice of infringement was received by the defendant. It was agreed that the accounting period should extend through the year 1940 inasmuch as at the end of that year the defendant ceased to infringe by reverting to the cross-cut motion of the Spalsbury patent referred to in the court's opinion.

The defendant in an account of its profits filed before the master on July 25, 1941 showed a gross income of $49,503.47 from sales and income from leased machines and a net profit alleged to be $15,525.98. This statement did not include income prior to July 29, 1931, the master's accounting commencement date.

The master found there were 290 infringing transactions on the part of the defendant on which recovery was to be allowed. These were divided into the following classes: 259 domestic leases, 20 domestic sales, and 11 foreign sales.

The plaintiff's principal claim comprised four separate claim bases. First, the plaintiff claimed, with respect to 188 domestic leases and the 20 domestic sales, he would have made corresponding leases of his machine but for the defendant's transactions and he claimed lost installation fees in the sum of $100 installation fee profit and $15 per month lost rental profit on these transactions. Second, he claimed reasonable royalty on the remaining 71 domestic leases. These were transactions with small or financially weak concerns with whom the

plaintiff would not do business for one reason or another. Third, he claimed damages due to rent reductions due to competition on 5 leases. And fourth, the plaintiff pursued profits on the defendant's 11 foreign sales.

On the first claim, the master awarded lost lease profits on 17 of the 188 claimed leases and on 8 of the 20 domestic sales amounting to $18,900, with interest in the sum of $6,872.40, together with installation fees of $1,200. On the balance of the claimed leases and the 71 unclaimed leases, he awarded general damages by way of reasonable royalty at the rate of $5 per machine per month which amounted to $39,610. He awarded $3,645, with interest of $1245.96, for rent reduction losses on 5 leases. He also awarded the defendant's profits on the 11 foreign sales which amounted to $688.89.

The total award including interest allowed was $72,162.25. The interest allowed was up to and including January 1, 1943 and the master further recommended the allowance of further interest because of exceptional circumstances, a matter that will be dealt with later.

Both parties have filed objections to the master's report. The court will take up the defendant's objections first in the order in which they are argued in its brief.

Objections 8, 9, 10, 15, 24, and 34 are directed to the proposition that "in so far as the master's award is based upon 'reasonable royalty', it is erroneous because (a) an award based on any theory of 'reasonable royalty' is not allowable when, as here, defendant's profits are ascertainable; and (b) because the rate of the master's award is unreasonable".

■ To support its contention that the maximum recovery to which the plaintiff is entitled in this equity proceeding is the defendant's profits as stated in its account, the defendant relies upon the case of Krentler-Arnold Hinge Last Co. v. Leman, D. C. Mass., 24 F.2d 423. The court in the Krentler case stated, page 425 of 24 F.2d: "By the terms of the statute * general damages can be awarded only when neither profits nor damages can be proved." I find myself in disagreement with this statement of the law if it means that if the defendant can prove his profits as was done in the Krentler case, the plaintiff must accept them as the measure of his damages.

There is no question that 35 U.S.C.A. § 70 gives a patentee in an equity suit the option to pursue damages or profits. Cf. Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664; Birdsall v. Coolidge, 93 U.S. 64, 23 L.Ed. 802. A patentee in an equity suit may not recover profits plus damages, but he has the choice of what in substance is the same, the profits plus any damages in excess thereof. 35 U.S.C.A. § 70; Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 95 F.2d 978, footnote at page 983; cf. McKee Glass Co. v. H. C. Fry Glass Co., 3 Cir., 248 F. 125, 129. Thus a patentee is not limited to the defendant's profits merely because the defendant can prove its profits with reasonable certainty as the defendant contends it has here. Where the profits of the defendant are an inadequate measure of the plaintiff's damage, the court in an equity suit may allow compensatory damages in addition to profits. Marsh v. Seymour, 97 U.S. 348, 360, 24 L.Ed. 963; Birdsall v. Coolidge, supra 93 U.S. at page 69, 23 L.Ed. 802; Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., supra; Fulton Bag & Cotton Mills v. Werthan Bag Co., 6 Cir., 28 F.2d 922, 924; Computing Scale Co., v. Toledo Computing Scale Co., 7 Cir., 279 F. 648, 673.

■ Further, in accordance with the terms of the statute, 35 U.S.C.A. § 70, if it appears that *either* the actual damages of the patentee—such as profits on lost sales or reduced profits—*or* the profits of the infringer are not susceptible of calculation with reasonable certainty, the court upon the evidence may award a reasonable sum *as general damages* which may be determined by opinion evidence or fixed by way of a reasonable royalty when there is no established royalty. It follows from what has been said that if the patentee elects to pursue damages and not profits, and damages are not susceptible of calculation with reasonable certainty, the plaintiff may be awarded general damages or reasonable royalty, whether or not the defendant's profits are ascertainable. In the case of Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., supra, 95 F.2d at page 983, the plaintiff was allowed to elect whether he would recover upon the basis of reasonable royalty where the actual damages could not be proved *or* take the infringer's profits which were definitely as-

* 35 U.S.C.A. § 70.

certained by the master. Cf. Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 66 F.2d 361, where it seemed the profits were ascertained and the exact amount of damages could not be proved (66 F.2d at page 361), the plaintiff was allowed reasonable royalty.

If the principle of law the defendant contends for was correct, i. e., that the maximum recovery to which the plaintiff is entitled, is the defendant's profit on the infringing business, it would lead to very harsh results. If an infringer could limit his liability by keeping his profits at an inconsequential figure by low competitive rates and at the same time keep an accurate account of his low profits, small competitors would be at his mercy where a patent was only of temporary substantial value. This contention of the defendant is without merit.

In the light of the principles of law set forth, we turn to further findings made by the master.

He found (a) that the defendant's profits were based on its own system of bookkeeping; that there was a wide difference between the plaintiff's and the defendant's rates, and the profits of the defendant were not adequately ascertainable as a satisfactory basis of adequate recovery by the plaintiff and (b) that the plaintiff's damages with respect to certain of the leases and sales made by the defendant were not susceptible of calculation and determination with reasonable certainty. He awarded reasonable royalty in these latter transactions.

With respect to the inadequacy of the defendant's profits as shown by its books, the evidence showed that the plaintiff and the defendant were the only two sources of heel flap trimmers in the market and the defendant charged for its machine $275 for an outright purchase, $68.75 as an installation fee, and $4 monthly on leased machines. The plaintiff, who was known to the trade as a source of heel flap trimmers, charged $250 for an installation fee ($100 of which was found to be profit) and $15 monthly rental, which the master found was all profit. The rates that the plaintiff charged were found to be reasonable with respect to shoe manufacturers with whom they were placed, i. e., those manufacturers that were making more than 500 pairs daily for shoes requiring heel flap trimming. The defendant's installa-

tion charge was less than the cost of its flap trimmer. It is apparent from the evidence, as the master found, that the defendant set its rates to make little profit and what the books with their inaccuracies showed as profits, was inadequate to measure the plaintiff's loss, especially in view of the fact that the plaintiff was the first and only manufacturer in a distinctive field with a successful heel flap trimmer. As to the plaintiff's election to pursue damages for lost lease profits on the defendant's leases and domestic sales, the master carefully reviewed each transaction and awarded actual damages where the plaintiff proved he would have made leases except for the defendant's infringement, and in those cases where the plaintiff could not, he awarded reasonable royalty at the rate of $5 per machine per month, a rate the master found was reasonable, regardless of the size of the manufacturer to whom a machine was leased. In view of the findings of the master, he committed no error in the method adopted by him in assessing damages. He was correct in awarding reasonable royalty in those transactions where the actual damages were not ascertainable with reasonable certainty.

This brings us to the contention that the rate of $5 per month per machine for reasonable royalty was unreasonable. The master realized that the direct evidence concerning this issue was not too extensive and he considered and analyzed the overall picture with respect to the infringement before concluding the royalty "while high would not be unreasonable." The correct principle of law involved was recognized by the master, i. e., that a royalty to be reasonable must be such that a licensee (plaintiff had no licenses outstanding) making a reasonable charge could pay the royalty and make a reasonable profit. Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., supra; Horvath v. McCord Radiator Mfg. Co., 6 Cir., 100 F.2d 326. The nature of the invention, its utility, advantages, and the extent of its use were properly considered by the master in this connection. Dowagic Mfg. Co. v. Minnesota Plow Co., 235 U.S. 641, 645, 35 S.Ct. 221, 59 L.Ed. 398. What is a reasonable royalty is a question of fact (United States Frumentum Co. v. Lauhoff, 6 Cir., 216 F. 610, 625), and as stated in Walker on Patents, Deller's Ed., Vol. 3, Sec. 833, the problem of determining what constitutes a reasonable royalty presents

many difficulties and it can at best be no more than an estimate. It is not susceptible to proof of a mathematical certainty. Cf. W. S. Godwin Co. v. International Steel Tie Co., 6 Cir., 29 F.2d 476, 477. The master had before him the testimony of the patentee that $5 per month per machine was reasonable. This estimate was based on the plaintiff's experience and an expert knowledge of costs. See Hunt Bros. Fruit-Packing Co. v. Cassiday, 9 Cir., 64 F. 585, 587. Mr. Nathan Heard, actively engaged in the patent law for many years, testified as to the amount of a reasonable royalty for patent licenses generally. The master evidently was not impressed by the latter's evidence, this court believes properly so, for the reason that Mr. Heard was asked to take into account in forming his opinion the rates charged by the defendant, the only competitor of the plaintiff in the heel flap trimming business and there was no question that Mr. Heard based his opinion, at least in part, on the rates charged by a competitor whose purpose in fixing its low rates was to dispose of him as a competitor in the shoe machinery field. This court agrees with the master that under such circumstances the rates charged by the defendant are of not too great value in aid of determination of a reasonable royalty. Further, in reading Mr. Heard's testimony, there is no disclosure of the fact that he gave due consideration to the utility and advantages of the plaintiff's machine in its limited field. His evidence was directed, as the plaintiff properly contends, to a license "for a competitive article with an unlimited market."

The defendant's contention that the Spalsbury machine, owned by the defendant, should be used as a "standard of comparison" in determining reasonable royalty is without merit. This machine, as is evidenced by the findings of this court, was not in a class with the plaintiff's machine; it was inferior as the master found; it had a transverse knife motion and was objectionable to the trade because it and other crosscut machines did not afford a clean cut to the heel flaps. This fact was established long before in the hearings on the infringement. The master was correct in rejecting this machine as a standard in a comparison of costs in fixing reasonable royalty. On all the evidence, I cannot say that the finding adopted by the master as reasonable royalty in those transactions where the plaintiff could not prove actual damages was clearly erroneous. Rule 53 (e)(2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Defendant's objections 1–7 relate to the master's award based on lost lease profits. The contention is that (a) there was not sufficient proof that the plaintiff would have been able to lease and sell his machine except for the defendant's competition and (b) there is no proof as to the amount of plaintiff's profits.

Concerning the first of these grounds, the master found that at all times during the period involved here, there was no other source for heel flap trimmers other than the plaintiff and the defendant, and that the plaintiff was at all times able to supply all demands for his machine as well as the defendant's; and that the plaintiff was in constant contact with those who could use flap trimmers. He further found that until the defendant's infringement the plaintiff marketed the only such device and that it was favorably received by the trade and commercially successful. There was no question as to the utility of the plaintiff's machine. There is ample support for these findings in the evidence and review of it is unnecessary, and the master in making his finding of fact that the plaintiff would have made leases except for the defendant's competition was guided by the appropriate rule of law, as it is laid down in the case of Standard Brands v. Federal Yeast Co., D. C., 38 F.2d 314, 322, wherein it is stated: "Proof in such a case cannot of course reach the point of absolute certainty and the natural tendency of the trade to deal with the lawful manufacturer or seller may be relied on, especially where the patent covers an article of a distinctive kind, or the plaintiff and defendant have the field to themselves." Cf. Transit Development Co. v. Cheatham Electric Switching Device Co., 2 Cir., 194 F. 963, 966. I do not agree with the defendant that the master's findings with respect to this issue were based on speculation or conjecture. Cf. Power Specialty Co. v. Connecticut Light & Power Co., 2 Cir., 80 F.2d 874.

As to the second point that the evidence was not conclusive with respect to the amount of profit the master found, i. e., that $100 of the plaintiff's $250 installation fee was proper as also the entire monthly rental of $15, again I believe the evidence supports the master's findings.

It is true the plaintiff did not furnish detailed records concerning costs, as the master recognized this would not be expected of a man conducting a "one man business". He could not be expected to have the exact organization of a large company, as is the defendant. The question of the credibility of the patentee was for the master and the latter was well within his rights in finding that the plaintiff's estimate of his average installation cost was $50, selling expenses $25, advertising $10, which, added to the cost of a machine ($27), making a total of $112, were correct. The allowance of $100 of the installation fee as profit was not clearly against the weight of the evidence, nor was the allowance of $15 per month, per machine, as profit, clearly erroneous. I believe the plaintiff sustained the burden imposed upon him in this connection. It was for the master to say whether he believed the plaintiff's estimate of his costs. The evidence showed the plaintiff specialized in shoe machinery and he ought to know costs in that field. The defendant takes nothing with objections 1–7. In substance, these objections and many of the other factual objections have as their only basis of complaint that they are not supported by a preponderance of the evidence. This objection is not within the scope of this court's review of the master's report. Cases cited that deal with burden of proof are not apposite, as this court is not dealing with any such proposition. Here, under Federal Rules of Civil Procedure, rule 53(e) (2), the court is compelled to accept the express findings of fact unless they are clearly erroneous. There must at some time be an end to litigation.

The next set of objections, 17–20, concerns the master's award of interest on the lost lease profits and reasonable royalty awards. The plaintiff claimed interest on all the recoveries except for profits resulting from foreign sales which the plaintiff elected to pursue and which were awarded, and the master has determined interest on lost lease profits and rental reduction losses and has recommended interest on the lost installation fees and reasonable royalty awards.

It is the defendant's contention that when recovery is claimed on the basis of damages on account of "lost profits" or on the basis of "reasonable royalty", no recovery of interest is allowable, because the damages in both those aspects are unliq-

uidated and it relies on the case of Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 449, 56 S.Ct. 792, 80 L.Ed. 1274. Cf. General Motors Corp. v. Dailey, 6 Cir., 93 F.2d 938, 942. It is true, as the Duplate case states, that interest should run from the date the damages are liquidated unless there are exceptional circumstances. It is obvious that the allowance of interest on the rent reduction losses was proper as this amount was liquidated. There remains to be considered whether there are present here "exceptional circumstances" that would allow the court in its discretion to allow interest on the unliquidated items, i. e., lost lease profits, reasonable royalty awards, and installation fees. I agree with the master that there were such exceptional circumstances as to warrant the allowance of such interest and they are well set forth in the master's report and there need here be reference to only some of the facts. As the master found, the defendant knew or must have known that the effect of offering its flap trimmer at the rates it did would ruin the plaintiff as its only competitor in a distinctive field which the plaintiff would have had all for himself but for the defendant's tortious conduct. This court in its opinion (32 F.Supp. 684, 687) stated that "Mathey alone possessed the creative faculty to require the cutter, in trimming Louis heels, to move in the direction of the intended cut, which fact, * * solved the problem of trimming Louis heels with a clean cut." One Boulton, with whom the defendant had patent dealings (see United Shoe Machinery Co. v. Mathey, D. C., 43 F.2d 617), had studied one of the plaintiff's machines before he brought out the infringing machine which the defendant purchased and placed on the market in competition with the plaintiff's machine, and as this court stated (32 F.Supp. at page 689): "What made the defendant's machine successful was incorporating in its device the dominating feature of the plaintiff's machine, i. e., the knife moving in the direction of the cut. * * * I can see no substantial difference as far as the mode of operation is concerned * * *. The principle of the plaintiff's machine has been ingeniously adopted by the defendant." This court thought at the time it wrote its opinion and thinks so at the present time that the defendant did not act in good faith in offering its machine to the market. It must have known the plaintiff would apply for a patent on his machine. The parties

had been in patent litigation before this time with the plaintiff. It is my belief that it should have known that Boulton's machine copied the dominant feature of the plaintiff's machine as it prepared Boulton's patent application in its own patent department, and that if it put it on the market, it would destroy, which it did, the plaintiff as a competitor. The infringement was deliberate, as the master found it was. For these reasons, I believe the court's discretion should be exercised in favor of allowing interest from the dates the master found the royalties should have been paid and the profits on the other leases were lost. Duplate Corp. v. Triplex Safety Glass Co., supra; Mowry v. Whitney, 14 Wall. 620, 653, 20 L.Ed. 860.

The exclusion, in arriving at the profit on foreign sales, of the cost of the Spalsbury machine was not error. The infringing machines were not made under the Spalsbury patent and the master held rightfully the cost of that patent should not be included in determining the infringing machine costs.

We have now dealt with the main objections filed by the defendant. There are other specific objections, but they have not been argued by the defendant in its brief nor can I find any merit in those that have not been specifically dealt with by the court.

There are some objections filed by the plaintiff that need to be discussed. The plaintiff contends that the interest (objections 8–9) on the royalties and profits be allowed to judgment date. I believe, because of the existence of exceptional circumstances that have been referred to above, this should have been done. I conclude the interest should be figured to the date of the judgment to be entered herein. That will be done by the parties upon the entry of the decree without the necessity of sending the report back to the master.

Plaintiff's objections 1 and 2 that the accounting period should commence on the date of the patent grant, June 2, 1931, instead of the date held applicable by the master, July 29, 1931, when written infringement notice was given to the defendant, has no merit. 35 U.S.C.A. § 49; cf. Muther v. United Shoe Machinery Co., D.C., 21 F.2d 773, 779, (D.C.Mass.). The case of Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736, is not applicable to the facts of the present case as plaintiff here had machines out on lease unmarked from date of his patent up to the date of notice of infringement.

There remain the plaintiff's objections (3, 4, 5) that the master committed an error of law because he required the plaintiff, as the latter contends, to prove that he "would certainly have lost" the infringing leases and sales in order to recover for lost profits on them. The plaintiff claims that he proved, if there had been a correct application of the rule concerning burden of proof in such cases, the lost profits in the major portion of his claimed leases and sales where the master awarded "reasonable royalty" and he claims the master's award should be increased on a lost profit basis with respect to them. It is true that the master's use of the phrase quoted above would seem to have imposed an unreasonable burden on the plaintiff in this regard, but I think at the most that the master's language may be regarded as inept. The master on p. 40 of his report plainly stated the correct applicable rule of burden of proof and cited it as found in Walker, Dell.Ed., Vol. 3, Sec. 829, pp. 2165, 2166. Reading the report and the careful and detailed analysis the master made of the infringing transactions, this court concludes that not only did the master apply correct measures of damages with respect to the different bases of plaintiff's claims but, in arriving at the result, he at all times had in mind the rule he so carefully set out; and that he applied the proper principle of law concerning the burden of proof. This is plainly evidenced on page 60 of the report where he used the phrase complained of because just below its use he again cites that the law required " 'evidence leading inevitably to the presumption' " that the plaintiff would have done the infringing business. It is reasonable to suppose the master had at all times in reaching his conclusion the proper applicable principle of law and gave the plaintiff the benefit of all its advantages as well as its disadvantages. Objections 3, 4, and 5 are overruled.

The plaintiff's objections 6 and 7 to the effect that the master erred when he measured "general damages" by way of "reasonable royalty" and did not award general damages more or less in a lump sum without recourse to reasonable royalty are overruled. I do not agree with the plaintiff that this is no case for a "reasonable royalty" award. The claim now pre-

702

sented seems to be predicated on the fact that the plaintiff has proved that he would have leased a great many machines the master could not find he would have leased, and contends that the plaintiff's established rental fee of $15 per month be used as an established royalty fee in measuring the damages, or, in the alternative, that general damages be assessed in some lump-sum amount, a "rough and ready" manner as the plaintiff contends, in order to compensate properly the plaintiff. One fatal defect with this is that the plaintiff has failed to prove that he would have made the claimed leases the master did not allow. And as the master says "to allow this claim would be to make, in the case of leased patented equipment, the infringing manufacturer always liable for a sum as large or larger than lost profits, *whether or not the lost profits could be proved*". (Emphasis mine.) The same objection exists as to the lump-sum award or, as the plaintiff calls it, "the rough and ready method".

This carries us to the question of an increased award to the plaintiff. Only damages, either special or general, may be increased. The award of $688.89 will have to be deducted from the award when the interest is finally figured, as this represents defendant's profits from foreign sales.

 As has been outlined above, this court finds the defendant did not act in good faith with respect to the infringement here. The infringement was deliberate. Enough subsidiary facts appear in the master's report and are outlined in this opinion to support this ultimate finding. However, with respect to an increase in damages, I agree with Judge Brewster of this court in increasing damages where there was a deliberate infringement. That distinguished jurist, long the senior member of this court, stated in Muther v. United Shoe Machinery Corp., supra, 21 F.2d 780: "While doubtless one of the purposes of the statute was to deter acts of infringement * * *, yet I do not conceive it to be the intent of the law to unjustly enrich the injured party at the expense of the wrongdoer." However, I believe full justice should be done to the plaintiff, the party wronged. The plaintiff has incurred considerable expense. There is little doubt that all the elements of damage done to the plaintiff are not included in the award made. On due reflection and looking at the whole situation objectively, I believe

if the award is increased fifty per cent, it will be adequate.

The findings of the master in his report are adopted as my findings of fact except as noted.

The plaintiff's and defendant's objections are overruled; the master's report is confirmed with the modifications reflected herein. No costs, as plaintiff was unsuccessful with one of his claims.

Decree accordingly.