## PACKWOOD v. BRIGGS & STRATTON CORP. et al.

### Civ. A. No. 1307.

United States District Court
D. Delaware.

Aug. 10, 1951.

804

Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., and W. B. Morton, Jr. (of Pennie, Edmonds, Morton & Barrows), and John E. Hubbell, of New York City, for plaintiff.

Arthur G. Connolly, of Wilmington, Del., and Ira Milton Jones and James R. Custin, of Milwaukee, Wis., for defendants.

LEAHY, Chief Judge.

Plaintiff sued for infringement Briggs & Stratton Corporation, an engine manufacturer, and Savage Arms Corporation, a manufacturer of power lawn mowers, upon claims 1, 2, 3 and 4 of reissue patent No. 23,146. The case was tried by jury. They returned a verdict of validity, infringement and awarded damages. Defendants now move, under F.R. 50(b)[1] to have the verdict and judgment set aside and to have judgment in defendants' favor in accordance with their former motion, made at trial (which was denied), for a directed verdict; or, in the alternative, for, under F.R. 59(a), a new trial. In addition, defendants have a motion for summary judgment on their counterclaim. Plaintiff moves for an allowance of attorney's fees and also for an increase in the amount of the verdict, under 35 U.S.C.A. § 67.

According to plaintiff, the invention of the patent in suit is "an improvement in power lawn mowers; more accurately, perhaps, in air-cooled internal combustion engines for use in power lawn mowers."[2] Such an engine, whether used on a lawn mower or for any of the numerous other purposes for which it may be employed, ordinarily has an impeller or fan mounted on its crankshaft to blow cooling air across the cylinder and a hoodlike shroud or blower housing which partially surrounds the engine and directs the stream of cooling air from the fan across the cylinder. The fan is inside the housing, in line with an opening at one side through which the cooling air is drawn. Defendant Briggs & Stratton for many years has manufactured engines having a stationary coarse-mesh wire screen fixed across the air intake opening in the housing and is still doing so.[3] This construction is, by stipulation, prior art as to the patent in suit.[4] The purpose of the screen is to intercept grass and debris which might be carried into the housing by the air stream.

In the plaintiff-Packwood patent a similar screen is used, but it is fastened to the engine starter pulley instead of the blower housing; but otherwise there is no change in any part of the engine or

1. Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

2. R. 13.

3. R. 206.

4. R. 264.

lawn mower. This difference in fastening of the screen, plaintiff's counsel admits, is the "invention". [5]

Whether the air intake screen is stationary (fixed to the housing) or rotary (secured to the starter pulley) its function is admittedly the same—it permits cooling air to enter the blower housing and at the same time excludes debris or foreign matter therefrom.[6] The claimed advantage of the rotating screen over the fixed screen is that grass and debris drawn against the rotary screen by the suction of the impeller will be "flicked outward" by centrifugal force so as not to be drawn into the blower housing by the stream of cooling air.[7] In practice, the evidence suggested the rotating screen has, at best, only a slight advantage over the fixed screen; indeed, it is uncontradicted in the record some officials of Briggs & Stratton can see no advantage in it whatsoever,[8] and when a rotating screen is used both the screen and the interior of the blower housing can become clogged with grass under certain conditions.[9]

Plaintiff admitted, through his patent expert and through counsel, it is old to use a rotating screen at the entrance to a blower housing to intercept dirt and debris which tend to be drawn into the housing by an impeller and to throw them off centrifugally [10]—at least half a century old.[11]

Defendants rely primarily upon Knight, No. 1,789,871, to sustain their defense the patent in suit is anticipated. Plaintiff's expert admitted [12] the problem to which the Knight patent is addressed is identical with Packwood as well as that of the defendant Briggs & Stratton engine with the fixed screen.

Evidence shows McCulloch Motors Corp. and Whirlwind Mower Co. had begun to produce engines and power mowers incorporating the rotating screen, and defendant Briggs & Stratton had received a production model of an engine equipped with a rotating screen—all before Packwood disclosed his alleged invention to any of these three concerns.[13] Three witnesses skilled in the field of internal combustion engines for power mowers, and who were actively employed in that field, testified without contradiction when the rotating screen first came to their attention—before Packwood "disclosed" it to them—they recognized it as old and "elementary" and could see nothing patentable in it.[14] One of these three men, a completely disinterested witness, had in fact conceived the idea independently of Packwood and did not consider it inventive.[15] It is uncontradicted engines with rotating screens are articles of general utility, employed for a wide variety of purposes [16] and defendant Briggs & Stratton has no way of knowing after it sells its product what any particular engine will be used for.[17]

After trial on the merits the jury returned a verdict finding the patent in suit valid and infringed by both defendants "as to lawn mowers only".[18] The jury found a reasonable royalty, as to each defendant, is 2½ cents per unit, and assessed damages against defendant Briggs & Stratton on the basis of 295,730 units and against Savage on the basis of 29,036 units.[19]

In support of the motions, defendants argue the patent in suit does not constitute invention because (1) it cannot constitute invention to choose which of two closely adjacent parts should be used to mount the air intake screen of an internal combustion engine used on a lawn mower; (2) *it does not constitute invention to transpose an old device or expedient from*

5. R. 47.

6. R. 58.

7. R. 45.

8. R. 216-7.

9. R. 332.

10. R. 69–72, 143.

11. R. 88, 96.

12. R. 85–6, 298.

13. R. 182–3.

14. R. 191, 197–8, 215–17, 223–4.

15. R. 191.

16. R. 211.

17. R. 99–100.

18. R. 387.

19. R. 395.

one art to another closely analogous art, where that device or expedient plays the same role in both cases; (3) the introductory phrase of a claim, which merely defines the environment in which a structure is used, cannot patentably distinguish the claimed combination from an identical prior art combination; and (4) the Commissioner of Patents is not justified in reissuing a patent where the patentee makes only a bald statement in the reissue oath that the defects in the original patent occurred through inadvertence, accident or mistake,—without specifying which—and merely points out the need for the reissue without explaining how the defect arose which necessitated it. Defendant Briggs & Stratton also argues it is not a contributory infringer because as a manufacturer it merely supplies one item of a patented combination, which item is an article of general utility, useful in a variety of devices and, under such circumstances, it cannot be held as a contributory infringer. Both defendants argue there is no evidence at all in the record to sustain the finding of infringement of claim 4 of the patent in suit.

1. There have been instances where judgment n. o. v. has been granted in patent cases.[20] This Circuit has held the nisi prius judge has power to set aside a jury's verdict in a patent case after a finding by the jury of both validity and infringement. Ryan Distributing Corporation v. Caley, 3 Cir., 147 F.2d 138. But, the Ryan case does not disturb the orthodox rule that the issue of validity and infringement in a patent case is one for the trier of the facts. Judge Goodrich stated the rule for upsetting a verdict. He said, 147 F.2d at page 140: "But in any question of fact, 'a verdict will normally be directed where both the facts and the inferences to be drawn therefrom, as supported by the overwhelming weight of the evidence, point so strongly in favor of one party or the other that the court feels reasonable men could not possibly come to a contrary conclusion.' 3 Moore's Federal Practice, p. 3104. Perhaps the decisions establish that the judge's power and duty in this respect goes further upon the question of invention in patent cases." The problem before me is applying the Ryan case to the facts at bar, for that case seems to hold that the trial judge has wide power to look at the question of invention, after the jury's verdict "as upon any other question, ordinarily treated as one of fact, but called a 'question of law' when its decision becomes the responsibility of the judge."

The question now arises whether the patent in suit is an advance over the existing art so as to meet the present high and exacting standard of patentability as recently established in Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127; Crest Specialty Co. v. Trager, 341 U.S. 912, 71 S.Ct. 733; Merit Manufacturing Co. v. Hero Mfg. Co., 2 Cir., 185 F.2d 350; Paramount Industries, Inc., v. Solar Products Corp., 2 Cir., 186 F.2d 999; Youngs Rubber Co. v. Allied Latex Co., 2 Cir., 188 F.2d 945; Frank B. Killian & Co. v. Allied Latex Co., 2 Cir., 188 F.2d 940; Lenox v. Landers, 2 Cir., 188 F.2d 744; Kleinman v. Betty Dain Creations, 2 Cir., 189 F.2d 546. My difficulty is who applies the higher standard of patentability, e. g., the jury, after finding the fact of invention, or the judge, who may suffer dissatisfaction with that verdict? In short, my difficulty is whether the recent cases were intended to disturb the established rule that unless a verdict cannot be sustained as the conclusion of reasonable men, taking the evidence in the light most favorable to the successful party, the verdict is not to be set aside, once rendered, nor a contrary verdict directed. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Smith v. Shevlin-Hixon Co., 9 Cir., 157 F.2d 51, 53–54. The question, in this and allied jury cases, is whether the conclusion of invention and infringement is to

20. McRoskey v. Braun Mattress Co., 9 Cir., 107 F.2d 143; McIlvaine Patent Corp. v. Walgreen Co., 7 Cir., 138 F.2d 177; Connors v. Ormsby, 1 Cir., 148 F. 13.

be sustained, and this raises the further question of how the verdict of the jury is to be regarded, i. e., whether it is to be regarded as one of fact or as one of law. If it is one of law, it comes to me weighed by the considered finding of the jury; if it is one of fact, under the rule stated above, I am not in a position to direct a contrary verdict. Judge Woodbury's excellent opinion in Hanovia Chemical & Mfg. Co. v. David Buttrick Co., 1 Cir., 127 F.2d 888, 890, reviews the repeated general statements by the courts that the question of invention is one of fact. He discusses. thoroughly the conflict between the frequently reiterated categorical statement that the question of invention is one of fact and the almost innumerable instances in which the courts have dealt with it as if it were one of law only. Judge Woodbury writes: "The nature of the prior art and the nature of what the patentee did to improve upon it must always be questions of fact. They may be relatively simple ones or they may be exceedingly complicated and involved, but questions of fact they must always remain." He concludes: "From the foregoing it seems apparent that no general statement can be made concerning the classification of the broad question of patentable invention either as one of fact or as one of law."

██ If I had the power to decide, I would hold the patent in suit invalid without much delay. But, under the cases as they now stand, I do not think I should as the thirteenth juror arrive at a verdict opposite to that reached by the jury, where the evidence as to invention was in sharp conflict and not overwhelmingly in favor of one party as against the other. I think the patent in suit is invalid. I reach this conclusion not because of the application of any *rule of law* known to me, but simply as a *matter of fact,* by simply looking at the device in suit, the alleged infringing device, and examples of the prior art devices. I can see no advance in the field in the revolving screen which plaintiff has attached to an ordinary gasoline lawn mower. Yet, until the appellate court elaborates its views, as announced in the Ryan case, as to whether the recent decisions on invention sharpen the power of a nisi prius judge to disturb a jury's verdict finding invention, because the judge may disagree with the verdict, I am unable to set aside the jury's verdict in this patent case where both validity and infringement have been found, and especially where the jury, such as was constituted in the case at bar, comprised a group of highly intelligent persons who attempted to analyze evidence which was in conflict in order to settle the disputed issue as to the nature of the patented device and as to the nature of the devices of the prior art. The jury found an exercise of the inventive faculty.[21] Hence, defendants' motions for a directed verdict or for judgment n. o. v. are denied. No valid reason has been suggested why there should be a new trial. The motion as to this is likewise denied.

██ 2. Defendants' motion for summary judgment on their counterclaim is also denied. The counterclaim must follow the main action where the issues are in common.[22] The only issue presented by the counterclaim not presented by the main action involves the propriety of certain warning letters of infringement sent by plaintiff. At pre-trial certain of the matters involved in the counterclaim were withdrawn.[23] What evidence there was, at trial, in support of the counterclaim, leads me to conclude that plaintiff's conduct was wholly

---

21. For an interesting discussion of trial-judge fact-finding in patent litigation, see the Appendix of the concurring-dissenting in part opinion of Judge Frank in Wabash Corp. v. Ross Electric Corp., 2 Cir., 187 F.2d 577, 586, 601, 602, where it was stated the comments as to fact finding were not "at least in the federal courts, fully applicable to jury verdicts * * * (cases cited). It may be doubted, however, whether jury verdicts in patent cases possess any special dignity with reference to many basic issues."

22. Ryan Distributing Corp. v. Caley, D.C. E.D.Pa., 51 F.Supp. 377; Van Alen v. Aluminum Co. of America, D.C.S.D.N.Y., 43 F.Supp. 833.

23. For example, the "Sears Roebuck issue was being dropped". No evidence was adduced to support it.

within the bounds of propriety in the sending of the writings.[24]

3. Plaintiff moves for an award of attorney's fees, based on 35 U.S.C.A. § 70. It is addressed to the discretion of the court.[25] Plaintiff urges that a Master should be employed to report on the reasonableness of the amount of attorney's fees which should be granted.[26] An award of attorney's fees is appropriate where the infringement complained of has been willful and the parties are disparate in resource. However, in this case, defendants' counsel was firmly convinced of the lack of invention in plaintiff's patent. His advice to his clients and the action they took do not, in my opinion, establish a case of "willfulness". Accordingly, plaintiff's motion for an award of attorney's fees is denied.

4. Plaintiff's motion for an increase in the amount of the verdict is based on a statutory right. 35 U.S.C.A. § 67. The power of the trial judge to make an additur is undisputed; but its exercise has been sparing. Here, as I said before, defendants' counsel had a bona fide and, in my opinion, a reasonable belief that the Packwood patent was invalid. This takes the infringement out of the class of "willful". Plaintiff urges as an additional reason for allowing an increase in the verdict the difficulties of proof of damages.[27] Proof of damages in the instant case was not insurmountable. In fact, damages were proved with specificity, and the jury, once given the basic data, fixed a reasonable royalty and then set a multiplier to work to arrive at a monetary figure of damages. I conclude that plaintiff's motion for judgment in a sum above the amount found by the jury should be denied.

In short, I have concluded that the verdict of the jury should not be disturbed and all the motions of both parties should be denied.

24. Robertson Rock Pit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783.

25. Excel Auto Radiator Co. v. Bishop & Babcock Mfg. Co., D.C., 86 F.Supp. 880.

26. See Garreau v. Genua, D.C., 88 F.Supp. 573.

27. Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 66 F.2d 361; and see Activated Sludge v. Sanitary Dist. of Chicago, D.C., 64 F.Supp. 25; and Mathey v. United Shoe Machinery Corp., D.C., 54 F.Supp. 694.